# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BARBARA FOX**
729 Massachusetts Avenue, NE
Washington, D.C.  20002

and

**HAMILTON P. FOX, III**
729 Massachusetts Avenue, NE                Civil Action No.:
Washington, D.C.  20002

Plaintiffs

v.

**GOVERNMENT OF THE DISTRICT
OF COLUMBIA**

**SERVE:**  Mayor Adrian M. Fenty
Or his designee
Office of the Secretary
Gladys Herring
John Wilson Building
1350 Pennsylvania Avenue, N.W
Washington, D.C.  20004

and

**B.L. SQUIRES**
101 M Street, SW
Washington, DC 20024

and

**SGT. BOYD**
101 M Street, SW
Washington, DC 20024

Defendants

CLASS ACTION COMPLAINT • FOX *ET AL.* V. GOVERNMENT OF THE DISTRICT OF COLUMBIA, *ET AL.*

**CLASS ACTION**

**COMPLAINT FOR INDIVIDUAL MONEY DAMAGES AND CLASS ACTION
DAMAGES AND JURY DEMAND**

**(§ 1983 Civil Rights Claims)**

**Introduction**

**1.**    This is an action brought by each of Hamilton P. Fox, III and Barbara Fox ("Plaintiffs") for damages suffered by them because of the conduct of Defendants Squires and Boyd at the CVS on Saturday December 20, 2008.

**2.**    Plaintiffs on behalf of themselves assert 42 U.S.C. § 1983 claims against Defendants Squires and Boyd and jurisdiction is based upon federal question and supplemental jurisdiction, 28 U.S.C. §§ 1331 and 1367.

**3.**    The Plaintiffs are citizens of the United States and residents of the District of Columbia, and are husband and wife who were 63 and 64 years of age, respectively, at the time of the events herein.

**4.**    During all events described herein, all police officers referred to herein, named or unnamed, including but not limited to Defendants Squires and Boyd, were police officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

**5.**    This Complaint is filed against Officer B.L. Squires and Sgt. Boyd in their Individual capacities, and against the Government of the District of Columbia.

**6.**     This is also an action brought by Hamilton P. Fox, III on his own behalf and on behalf of the class defined below injured (or presently subject to injury) ("Post & Forfeit" Class) by the Government of the District of Columbia's policy and practice of making persons arrested on "collateral offenses" pay money (ranging between $25 and $1,000 based on the offense) to be released directly from the station houses in the police districts in which they were arrested to avoid being sent to Superior Court for presentment before a judicial officer.

**7.**     Mr. Fox and the Post & Forfeit Class bring this action against the Government of the District of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth, Fifth, Sixth and Eighth Amendments, for injuries suffered by them, because the District forced them to pay money (ranging between $25 and $1,000 based on the offense) to be released directly from the station houses in the police districts in which they were arrested to avoid being sent to Superior Court as "lock ups" for presentment before a judicial officer.

**8.**     From time to time the Chief Judge of the Superior Court will issue an administrative order specifically authorizing the MPD to employ the post and forfeit procedure during a protest when the Superior Court is in session subject to specific criteria. This case does not address use of the post and forfeit process in those situations.

**9.**     Moreover, this case does not address the post and forfeit procedure as it is administered by the prosecutors of the District of Columbia (OAG and USA) in open court before judicial officers at presentment pursuant to D.C. Code § 16-704 or D.C. Code § 23-1321(c)(1) (B)(xii)(Release prior to trial).

**10.**     All events described herein occurred in the District of Columbia.

### Jurisdiction and Venue

**11.**     This Court has jurisdiction over the individual claims and the "post & forfeit" claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**12.**     Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district.

### Allegations Relating to Individual (Non-Class) Claims of Plaintiffs

**13.**     The allegations relating to the class action claims of Mr. Fox are stated below.

**14.**     Mr. Fox was arrested by officers of the Metropolitan Police Department ("MPD") on the evening of December 20, 2008.

**15.**     The officers charged him with the D.C. Code offense of "disorderly conduct – loud and boisterous."  D.C. Code § 22-1321(1).

**16.**     Mr. Fox did not commit the elements of the offense nor did he commit any other offense.

**17.**     There was no probable cause to arrest Mr. Fox on any offense.

**18.** By Order dated 10/18/2010 a judicial officer of the Superior Court of the District of Columbia found that by clear and convincing evidence Mr. Fox did not commit the offense for which he was arrested.

**19.** On or about Saturday, December 20, 2008, at approximately 5:00 p.m., Mr. Fox drove Mrs. Fox to the CVS Pharmacy at 661 Pennsylvania Avenue SE, to pick up medication for herself and her elderly father.

**20.** Mr. Fox dropped off Mrs. Fox and pulled around onto D Street near 7th Street to wait for Mrs. Fox.

**21.** There was a sign post with two parking signs. The top sign had an arrow pointing east and read "No Standing or Parking Anytime." The bottom sign had an arrow pointing west and read "No Parking/ Loading Zone/ For Commercial Vehicles Only/ 7:00 a.m. to 6:30 p.m./ Monday-Saturday."

**22.** Mr. Fox pulled west of the sign and remained in his standing and running vehicle with the lights on while he waited for Mrs. Fox to return.

**23.** Defendant Squires pulled his marked police vehicle behind Mr. Fox. Something was said on the vehicle sound system, but Mr. Fox could not understand it, so Mr. Fox got out of his vehicle and walked to Officer Squire's vehicle.

**24.** Officer Squires told Mr. Fox that parking was not allowed where his vehicle was.

**25.**    Mr. Fox said he was not parked, he was standing while waiting for his wife who was in the CVS.

**26.**    Officer Squires said "Gotta move your car, Sir."

**27.**    Mr. Fox, incredulous as the street signs were plainly understandable, asked to speak with a supervisor to discuss the matter.

**28.**    Officer Squires told Mr. Fox that he could stand on the sidewalk to wait for a supervisor.  Mr. Fox stood there for about 15 minutes.

**29.**    Mrs. Fox came out, asked what was going on, and got into the vehicle. Mr. Fox waited a few more minutes for a supervisor, but none came, and the parking issue was moot, so he got back into his vehicle to started to leave. However, Officer Squires activated his siren, and Mr. Fox stopped.

**30.**    Mr. Fox then got out and walked to Officer Squires' vehicle, Officer Squires said that since Mr. Fox asked to speak with a supervisor, he had to wait for a supervisor.

**31.**    At that time, numerous MPD police officers swarmed the scene, including officers on Segways and in vehicles.

**32.**    Mr. Fox then made a remark to an arriving officer, within earshot of Officer Squires and other officers, that was derogatory of Officer Squires' intelligence and competence.

**33.**    Mr. Fox started getting simultaneous and conflicting instructions from different police officers, and so Mr. Fox, unable to comply with one request

without contradicting another, went to the back bumper of his vehicle and said he would stand and wait there.  No MPD officer thereafter objected or instructed Mr. Fox to stand elsewhere.

**34.**    Sgt. Boyd then spoke with Officer Squires, who said of Mr. Fox, "This guy has an attitude problem."

**35.**    Sgt. Boyd later came over and told Mr. Fox to put his hands behind his back.  Mr. Fox asked why, but Sgt. Boyd refused to say, and instructed him again to put his hands behind his back, and said "That's the second time I told you."  Mr. Fox complied and was handcuffed.

**36.**    A higher-ranking official then came by and said "You asked for an official, I'm the official."  Mr. Fox, in cuffs, responded that it was a little too late for that.

**37.**    Mrs. Fox got out of the vehicle, asked what was happening, but was ordered back into the vehicle.  She returned to the vehicle and rolled down her window.

**38.**    Sgt. Boyd approached, Mrs. Fox asked what was happening, Sgt. Boyd said "Shut up."  Mrs. Fox again asked what was happening, Sgt. Boyd said if he had to tell her to shut up again, he would arrest her.

**39.**    Mrs. Fox started crying, and asked why she could not ask a question.  Sgt. Boyd then ordered her out of the vehicle and told her to put her hands on the vehicle, which she did.  Sgt. Boyd said yelled "We don't play!"

**40.**    Sgt. Boyd and Officer Squires effected Mr. Fox's arrest, and he was taken away from the scene.  In that context, Sgt. Boyd said sarcastically to Mrs. Fox as he was leaving, "Do you have any more questions now?

**41.**    Remaining officers then demanded Mrs. Fox's driver's license, called in her name to the police department, caused her to be unable to leave, then gave the license back to her and let her leave.

**42.**    The Segway officers first looked at Ms. Fox's license and she heard the transmissions on the radio as the officers called it in to see whether she had any warrants or issues with the license.

**43.**    Finally the officers returned her license to her and allowed her to leave.

**44.**    Mr. Fox was arrested on a charge of disorderly conduct.  At no time did Mr. Fox act in a disorderly or unlawful manner.

**45.**    Officer Squires additionally issued a $50 parking ticket to Mr. Fox, without probable cause.

**46.**    Officer Squires knew the difference between "parking" and "standing," and was simply harassing Mr. Fox from the start.

**47.**    Both Sgt. Boyd and Officer Squires knew that Mr. Fox had committed no crime, and the purpose of the stop, arrest, and detention was simply to bully Mr. Fox, and arrested him in retaliation for objecting to Officer Squires' arbitrary order to move his car, and for disparaging Officer Squires' intelligence and criticizing his exercise of police power.

**48.** Sgt. Boyd's mistreatment, stop, and detention of Mrs. Fox served no legitimate law enforcement purpose, and was done solely for the purpose of bullying her.

## <u>Count 1 – 42 U.S.C. § 1983; Fourth Amendment (Barbara Fox)</u>

**49.** The Plaintiff adopts by reference the paragraphs preceding Count 1 as if fully set forth herein.

**50.** This count is filed against Sgt. Boyd in his individual capacity.

**51.** In stopping and detaining Mrs. Fox, Defendant Boyd acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mrs. Fox's well-established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

**52.** As a direct and proximate result of this violation, Mrs. Fox suffered a deprivation of constitutional rights, loss of liberty, and suffered substantial physical and mental injuries, and will continue to suffer severe mental distress.

## <u>Count 2 – 42 U.S.C. § 1983; First Amendment (Hamilton P. Fox III)</u>

**53.** The Plaintiff adopts by reference the paragraphs preceding Count 1 as if fully set forth herein.

**54.** This count is filed against Sgt. Boyd and Officer Squires in their individual capacities.

**55.** In arresting Mr. Fox, Defendants Boyd and Squires acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mr. Fox's well-established right under the First Amendment to the United States Constitution to freedom of expression.

**56.**    As a direct and proximate result of this violation, Mr. Fox suffered a deprivation of constitutional rights, loss of liberty, was battered pursuant to the arrest, and suffered substantial physical, mental, and economic injuries, and will continue to suffer severe mental distress.

### Count 3 – 42 U.S.C. § 1983; Fourth Amendment (Hamilton P. Fox, III)

**57.**    The Plaintiff adopts by reference the paragraphs preceding Count 1 as if fully set forth herein.

**58.**    This count is filed against Sgt. Boyd and Officer Squires in their individual capacities.

**59.**    In arresting Mr. Fox, Defendants Boyd and Squires acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mr. Fox's well-established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

**60.**    As a direct and proximate result of this violation, Mr. Fox suffered a deprivation of constitutional rights, loss of liberty, was battered pursuant to the arrest, and suffered substantial physical, mental, and economic injuries, and will continue to suffer severe mental distress.

## ALLEGATIONS RELATING TO MR. FOX'S CLASS ACTION CLAIMS

**61.**     Mr. Fox incorporates by reference all allegations pled above.

**62.**     The details of Mr. Fox's arrest, post and forfeit, and release pled in support of his class action claims are pled below after allegations describing the District's arrest, release and post and forfeit policies and practices.

## "STATION HOUSE RELEASES" OF PERSONS ARRESTED BY THE MPD

**63.**     District of Columbia statutes (D.C. Code § 23-1110 (a) and (b)(2); D.C. Code § 16-704) authorize the MPD to make two types of "station house" releases[1] of arrestees whom the MPD intend to charge with offenses: (1) release on citation, if the arrestees meet certain criteria designed to screen out flight risks and persons who are a danger to the community; and (2) release on collateral bond.

**64.**     The MPD is also authorized to release persons whom it arrested and took to the station but whom the MPD has decided not to charge.

**65.**     The MPD virtually never makes releases upon collateral bond where a person is released upon payment of money or posting of a bond to secure a promise to appear at a subsequent court date.

**66.**     During the class period the MPD released fewer than ten arrestees per year on collateral bond.

_____

[1] Release directly from an MPD district station or other MPD booking facility as opposed to transporting them to Superior Court for presentment and a release determination hearing which generally takes place the next day, or the day after that if the arrest is made on a Saturday.

**67.**    During the class period until at least very recently the MPD virtually never released  on "citation" release persons arrested on or charged with "collateral offenses" (defined below) such as disorderly conduct, POCA, or minor traffic offenses.

**68.**    The MPD does release arrestees via different types of "post & forfeit" release type described below.

## THE "POST & FORFEIT" PROGRAM

**69.**    For many years and at least since 1971, the District of Columbia through its mayor, city council and police department have had a policy of charging persons arrested on "collateral offenses" (described below) amounts of money (ranging between $25 and $1,000 based on the offense) to be released directly from the station houses in the police Districts in which they were arrested instead of being charged and transported to the Superior Court for presentment before a judicial officer.

**70.**    The "post and forfeit" program takes several forms.

**71.**    The prosecutors of the District of Columbia (OAG) administer a "post and forfeit" procedure in open court before judicial officers at presentment in Traffic Court. In this procedure an individual at presentment while represented by counsel signs a money bond to secure his appearance at the next court date. The amount of the money bond is equal to the fine for the offense and the

defendant may elect to forfeit the collateral subject to judicial action under

D.C. Code § 16-704 and the prosecutor agrees to terminate the prosecution.

**72.**    A second method is pursuant to MPD Form 61D.

**73.**    In an MPD Form 61D "post and forfeit" the arrestee has 15 calendar

days from the date of the "post and forfeit" to appear at the station from which

he or she was arrested to "forfeit the collateral" or request an arraignment date.

**74.**    "Post & forfeit" is an MPD program pursuant to which the MPD, in their

sole discretion, release a person arrested on a "collateral offense" directly from

the station house and decline to pursue the arrest and decline to refer the case

to the District of Columbia Attorney General for prosecution if the person pays

MPD a sum of money usually between $25.00 and $1,000.00 depending on the

offense.

**75.**    In 2005 the D.C. Council passed legislation defining the "post and forfeit"

procedure as "the procedure enforced as part of the criminal justice system in

the District of Columbia whereby a person charged with certain misdemeanors

may simultaneously post and forfeit an amount as collateral (which otherwise

would serve as security upon release to ensure the arrestee's appearance at

trial) and thereby obtain a full and final resolution of the criminal charge."

D.C. Code § 5-335.01(a).

**76.**    The definition of the practice as implemented by the District of Columbia

stripped of legal fictions is that District of Columbia through the MPD uses the

coercive power of the criminal justice system to exact money from arrestees in exchange for release from incarceration and conditional termination of the prosecution of any arrest charges.

**77.** A "collateral offense" is an offense on which a person is eligible for release on "post & forfeit."

**78.** Whether an offense is considered a "collateral offense" is determined by the MPD.

**79.** The MPD typically classifies an offense as a "collateral offense" if the offense is on the list of "collateral offenses" periodically published by the Board of Judges of the Superior Court for use in the post and forfeit system administered in the Traffic Division of the Superior Court.

**80.** The MPD have sole discretion to administer the "post and forfeit" release program.

**81.** The MPD have sole discretion to make decisions about which arrestees are actually offered citation, bond or "post & forfeit" release.

**82.** The MPD have vested authority to make decisions about which arrestees are actually offered citation, bond or "post & forfeit" in the Watch Commander in charge of each of the District's police stations.

**83.** The MPD have delegated discretion to make decisions about which arrestees actually get released on "post & forfeit" in the Watch Commander in charge of each of the District's police stations.

**84.**    In practice the MPD in their discretion employ the post and forfeit release type regardless of whether the person presents a flight risk.

**85.**    The money under the "post and forfeit" release procedure is not "bail or collateral" under DC Code § 23-1110 or "money [deposited] as collateral security" under DC Code § 16-704.

**86.**    A promise to appear in court for a hearing is not an element of a "post and forfeit" release because the MPD do not require the person to appear after a "post and forfeit" release.

**87.**    The front page of the "post and forfeit" form signed by persons released under "post and forfeit" states: "You are eligible to forfeit collateral for this charge."

**88.**    It also states: "By signing this form, you are acknowledging that it is your choice to elect to forfeit the collateral amount set for this charge, and that by doing so, you are agreeing to waive your right to a hearing in court."

**89.**    The back page of the "post and forfeit" form defines "Elect to Forfeit Collateral" as: "Collateral is an amount of money assigned to a charge that you must pay and forfeit in order to be released."

**90.**    In practice the MPD in their discretion employ the post and forfeit release type regardless of whether the arrest is supported by probable cause.

**91.**    Moreover, the money paid under a "post and forfeit" release is not forfeited by a judicial officer upon revocation of a bail agreement because of a breach by the arrestee.

**92.**    Any "forfeiture" of the money is effected by the MPD.

**93.**    The District receives the "post and forfeit" money intending to keep it and apply it to its general revenues.

**94.**    In practice, persons arrested in the District of Columbia on "collateral offenses" have just one release option made available to them by the MPD: "post & forfeit."

**95.**    In practice, if a person arrested on a "collateral offense" declines to pay money to have his charges dismissed under the "post & forfeit" program he or she is denied release and transported to Superior Court for presentment and a release determination hearing which generally takes place one or two days after arrest.

**96.**    In practice, until the last few months before the filing of the original complaint in this case the MPD almost never offered citation release to persons arrested in the District of Columbia on "collateral offenses."

**97.**    In practice, during the period from 2004 to 2007, the MPD offered citation release to less than 10 persons arrested in the District of Columbia on "collateral offenses."

**98.**    Significantly, disorderly arrests that are resolved through "post & forfeit" do not get referred for prosecution and so do not receive any kind of individual prosecutorial scrutiny through the papering process.

**99.**    Moreover, since such cases do not get papered and presented in Court, they get no kind of judicial review.

**100.**    The MPD General Orders designate the Watch Commander as the final arbiter of whether a person is eligible for "post & forfeit" release and no other person or agency reviews these decisions.

**101.**    Thus the MPD administers the "post & forfeit" program out in the field and in the station house totally within its own discretion without oversight by any other agency

**102.**    Moreover, "post & forfeit" arrests involve minimal effort on the part of the officers involved because no officer has to appear for papering or court appearances.

**103.**    "Post & forfeit" arrests generate cash revenue for the District.

**104.**    "Post and forfeit" revenue is not accounted for by the MPD.

**105.**    "Post & forfeit" arrests count as arrests on an officer's arrest statistics.

**106.**    The MPD does not collect written acknowledgements from persons released on "post & forfeit" that they elected "post & forfeit" release from among the available "menu" of release options: "post & forfeit," bond, and citation.

**107.**   A person released on "post & forfeit" theoretically may move to withdraw the "election" of a "post & forfeit" release.

**108.**   However, this option is not available to persons released on "post and forfeit" because the process of electing to withdraw the "post and forfeit" election is so cumbersome and lengthy as to not be a real option.

**109.**   Unlike the Superior Court "post and forfeit" system whether the "post and forfeit" election is made in Court under the supervision of a Superior Court judicial officer a "post and forfeit" election is not assigned a case number or counsel.

**110.**   A case number has to be obtained from the clerk's office before the motion for revocation of the "post and forfeit" election can be filed.

**111.**   The District of Columbia Office of the Attorney General typically delays for months or longer in responding to a motion to set aside the "post and forfeit" election even after ordered to respond by the Court.

**112.**   A person released on "post & forfeit" may move to withdraw the "election" of a "post & forfeit" release but there is no provision in any General Order, rule or statute for return of the "collateral" money.

**113.**   Legislation passed by the MPD Council in response to the Report obligated the District, through the Mayor, to monitor the MPD's administration of the "post & forfeit" program but the District has not monitored the MPD's

administration of the "post & forfeit" program as required by law.  D.C. Code §
5-335.01(h).

**114.**  Legislation passed by the MPD Council in response to the Report
obligated the Mayor to submit an annual public report[2] to the Council
identifying the total amount of money collected the previous year pursuant to
the post-and-forfeit procedure and the number of criminal charges, by specific
charge, resolved the previous year using the post-and-forfeit procedure.

**115.**  However, the Mayor has yet to collect any such data or to submit any
such reports.

**116.**  The money arrestees pay under the "post and forfeit" release procedure is
not "bail or collateral" under DC Code § 23-1110 or "money [deposited] as
collateral security" under DC Code § 16-704.

**117.**  The essence of bail [or species of bail such as a deposit of money in lieu
of bail or an unsecured appearance bond] is an agreement that the accused will
appear in such court and at such time as ordered, whether it is evidenced by a
written undertaking or its terms are implied from the fact that he deposits
money in lieu of bail. The agreement is secured by money or property that the
accused agrees to forfeit upon failing to appear as required or upon some other

---

[2] The statute provides that data shall be reported separately for instances in
which the post-and-forfeit procedure is independently used by the MPD
(without the approval, on a case-by-case basis, of either the Office of the
Attorney General or the Superior Court of the District of Columbia), and for all
other instances in which the post-and-forfeit procedure is used; and that the
report shall also identify the fund or funds in which the post-and-forfeit
moneys were placed.  D.C. Code § 5-335.01(h).

breach of the agreement.  DC Code § **23-1321**. DC Code § **23-1321 (**Bail is money or property given pursuant to an agreement to forfeit upon failing to appear as required, such property including money as is reasonably necessary to assure the appearance of the person as required)**.**

**118.**  "Post and forfeit" payments have none of the characteristics of bail paid upon detention to secure release to appear at a hearing.

**119.**  Arrestees do not pay the money to assure their appearance for trial or for further hearing.

**120.**  The front page of the "post and forfeit" form states: "You are eligible to forfeit collateral for this charge."

**121.**  It also states: "By signing this form, you are acknowledging that it is your choice to elect to forfeit the collateral amount set for this charge, and that by doing so, you are agreeing to waive your right to a hearing in court."

**122.**  The back page of the "post and forfeit" form arrestees sign defines "Elect to Forfeit Collateral" as: "Collateral is an amount of money assigned to a charge that you must pay and forfeit in order to be released."

**123.**  Moreover, "post and forfeit" money is not forfeited by a judicial officer upon revocation of the bail agreement because of a breach by arrestees.

**124.**  Any "forfeiture" of "post and forfeit" money is effected by the MPD.

**125.**  No statute applicable to the District of Columbia designates to the MPD the authority to revoke bail or to forfeit bail or collateral.

**126.** DC Code § 16-704 grants that authority to "the court."

**127.** The District receives "post and forfeit" money intending to keep it and apply it to its general revenues.

**128.** Moreover, only a judicial officer can "admit" a person to bail although a designee such as a station house clerk can take, accept or approve after allowance.

**129.** But, the MPD in effect "admits" arrestees to bail because the discretion to allow an arrestee to "post and forfeit" lies within the discretion of the Watch Commander based on criteria established by the MPD and not by a judicial officer and the designation of the authority to "take bail or collateral" granted by the Superior Court to the MPD under DC Code § 23-1321 and the statute does not contemplate the "post and forfeit" procedure as applied to Mr. Fox.

**130.** Bail can only be forfeited upon revocation of the bail agreement for breach by the arrestee by a judicial officer having jurisdiction over the case either <u>sua</u> <u>sponte</u> or upon motion of the prosecutor.

**131.** Therefore the "post and forfeit" payment is in the nature of a fine.

**132.** A check of practices in other major metropolitan areas by informally surveying local attorneys and experts indicates that neither Baltimore, New York, Atlanta nor Los Angeles use a "post & forfeit" system under which arrestees pay money to the arresting police agency to get released and have their cases dismissed.

## DETAILS OF MR. FOX'S ARREST, POST AND FORFEIT, AND RELEASE

**133.**  Mr. Fox's first contact with MPD began about 5:00 pm on Saturday, December 20, 2008.

**134.**  Officer Squires detained Mr. Fox about 5:20 pm.

**135.**  The MPD transported Mr. Fox to the 1st District station house arriving there about 6:00 pm.

**136.**  Mrs. Fox arrived at 1st District about 15 minutes after Mr. Fox, around 6:00 pm.

**137.**  Mr. Fox was placed in a holding cell with other persons.

**138.**  During this time a police officer came to the cell and asked another person whether he was willing to post $35.00 to get released.

**139.**  The man said no, I'm not paying any money.

**140.**  The officer said "OK you're going to Central Cellblock" and some time later the man was taken away.

**141.**  As the evening wore on, certain people were put in and taken out of the cell.

**142.**  At least twice Mr. Fox heard police call people out of the cell and tell them they were being transported to Central Cellblock.

**143.**  On the first load, one of these people was the man who had refused to pay the $35.00.

**144.**  Around 8:00 pm or 9:00 pm Officer Squires came in and showed Mrs. Fox her husband's wallet and asked Mrs. Fox whether she would pay Mr. Fox's $35.00 "post & forfeit" amount.

**145.**  Mrs. Fox said yes.

**146.**  Officer Squires came back and told Mr. Fox "You have to post $35.00. Your wife had to go home.  Can we take it out of your wallet?"

**147.**  Mr. Fox said yes.

**148.**  Although he said yes, Mr. Fox was not entirely clear at this point exactly what was involved with the $35.00 but based on what happened to the man who refused to pay the $35.00 he believed he too would be taken to Central Cellblock if he did not pay.

**149.**  Finally, Mr. Fox was called out of the cell and fingerprinted on the LiveScan machine.

**150.**  Either just before or just after the fingerprinting process an officer gave Mr. Fox a "post & forfeit" form to sign.

**151.**  The "post & forfeit" form said that Mr. Fox's charge was "disorderly conduct – loud and boisterous."

**152.**  This was the first time anyone had told Mr. Fox what he was being charged with.

**153.**  Mr. Fox read on the form that forfeiture could be set aside upon motion.

**154.** The "post & forfeit" form further said that it was not an admission of guilt.

**155.** The "post & forfeit" form has a box with the legend "Time collateral/ bond posted."

**156.** On the "post & forfeit" form Mr. Fox signed, the station clerk or one of the other officers wrote 22:45 in the box and circled "pm."

**157.** Mr. Fox posted his collateral of $35.00 and signed the form a few minutes before or after 22:45 hours Saturday night, December 20, 2008.

**158.** At the point of signing the "post & forfeit" form, or within 15 minutes thereafter, all administrative steps incident to the arrest (such as booking, fingerprinting, identification and warrants checks) and release determinations, except non-discretionary ministerial acts, were completed.

**159.** Once the necessary administrative steps incident to the arrest and the release determination were completed, Mr. Fox was eligible to be released because at that point the MPD had no legitimate reason to hold him.

**160.** Mr. Fox was never offered the option of simply posting "bail" or "collateral" pursuant to D.C. Code § 23-1110(a) or receiving a "citation" under D.C. Code § 23-1110(b) as a release option.

**161.** No citation may be issued under paragraph (1) or (2) unless the person authorized to issue the citation has reason to believe that the arrested person

will not cause injury to persons or damage to property and that he will make an appearance in answer to the citation.

**162.**  Mr. Fox met all the criteria for citation release which are listed on MPD General Order series 502, number 06, effective date March 29, 2007 styled "Citation Release Program" which purports to establish "procedures for the citation release of adults who have been charged with misdemeanors and meet specific citation release eligibility requirements."

**163.**  Mr. Fox's arrest offense was not a domestic violence offense; he had no outstanding warrants of any kind; he had no pending cases or cases he was wanted on; he never said anything to indicate he would not appear if released on citation; he had never been given citation before; he was not on any form of conditional release; he was not intoxicated or incoherent nor had he indicated he might cause injury to other persons or property; he did not make a statement of intent to flee; he has no record indicating a BRA charge.

**164.**  The officers never gave Mr. Fox an interview with Pretrial Services to determine release eligibility which MPD General Order series 502, number 06, styled "Citation Release Program" states is required for a citation or bond release but not for a "post & forfeit" release.

**165.**  MPD never asked Pretrial Services to make a release eligibility determination for citation release for Mr. Fox.

**166.**  Mr. Fox's "post & forfeit" form indicates only option he was offered was "post & forfeit."

**167.**  So, Mr. Fox signed the "post & forfeit" form and paid the $35.00.

**168.**  Mr. Fox did not admit guilt by signing the "post & forfeit."

**169.**  He signed it to avoid having to go to Central Cellblock and because the officers did not offer him any other form of release.

**170.**  Mr. Fox was released from the 1st District into his own custody about 3:00 a.m. in the morning of December 21, 2008 on the "post & forfeit" release.

**171.**  Thus the MPD delayed releasing Mr. Fox from MPD custody for about 4 hours after all the necessary administrative steps incident to the arrest and the release determination were completed.

**172.**  The arrest was abandoned by the MPD and never referred to the Attorney General of the District of Columbia for prosecution.

**173.**  The money Mr. Fox paid under the "post and forfeit" release procedure was not "bail or collateral" under DC Code § 23-1110 or "money [deposited] as collateral security" under DC Code § 16-704.

**174.**  The essence of bail [or species of bail such as a deposit of money in lieu of bail or an unsecured appearance bond] is an agreement that the accused will appear in such court and at such time as ordered, whether it is evidenced by a written undertaking or its terms are implied from the fact that he deposits money in lieu of bail. The agreement is secured by money or property that the

accused agrees to forfeit upon failing to appear as required or upon some other breach of the agreement.  DC Code § 23-1321. DC Code § 23-1321 (Bail is money or property given pursuant to an agreement to forfeit upon failing to appear as required, such property including money as is reasonably necessary to assure the appearance of the person as required).

**175.**  The payment Mr. Fox made has none of the characteristics of bail paid upon detention to secure release to appear at a hearing.

**176.**  Mr. Fox did not pay the money to assure his appearance for trial or for further hearing.

**177.**  The front page of the "post and forfeit" form states: "You are eligible to forfeit collateral for this charge."

**178.**  It also states: "By signing this form, you are acknowledging that it is your choice to elect to forfeit the collateral amount set for this charge, and that by doing so, you are agreeing to waive your right to a hearing in court."

**179.**  The back page of the "post and forfeit" form Mr. Fox signed defines "Elect to Forfeit Collateral" as: "Collateral is an amount of money assigned to a charge that you must pay and forfeit in order to be released."

**180.**  Moreover, the money was not forfeited by a judicial officer upon revocation of the bail agreement because of a breach by Mr. Fox.

**181.**  Any "forfeiture" of the money was effected by the MPD.

**182.**  No statute applicable to the District of Columbia designates to the MPD the authority to revoke bail or to forfeit bail or collateral.

**183.**  DC Code § 16-704 grants that authority to "the court."

**184.**  The District received the money intending to keep it and apply it to its general revenues.

**185.**  Moreover, only a judicial officer can "admit" a person to bail although a designee such as a station house clerk can take, accept or approve after allowance.

**186.**  The MPD in effected "admitted" Mr. Fox to bail because the discretion to allow an arrestee to "post and forfeit" lies within the discretion of the Watch Commander based on criteria established by the MPD and not by a judicial officer and the designation of the authority to "take bail or collateral" granted by the Superior Court to the MPD under DC Code § 23-1321 does not contemplate the "post and forfeit" procedure as applied to Mr. Fox.

**187.**  Bail can only be forfeited upon revocation of the bail agreement for breach by the arrestee by a judicial officer having jurisdiction over the case either <u>sua</u> <u>sponte</u> or upon motion of the prosecutor.

**188.**  Moreover, as part of the "post and forfeit" procedure the District agrees to abandon the prosecution or not refer it for prosecution.

**189.**  Abandoning the prosecution results in an exoneration of a bond.

**190.**  Under the "post and forfeit" procedure the payment is not a payment to ensure performance of a promise to appear that is forfeitable upon breach of the promise by the arrestee.

**191.**  In these cases, the District uses the full force and might of its criminal justice system to arrest persons then demands money from them to release them and to make their cases go away.

## RULE 23 ALLEGATIONS

## RULE 23 ALLEGATIONS: Post & Forfeit Class

**192.**  Mr. Fox on behalf of himself and the Post & Forfeit Class brings this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was in the custody of the MPD after being arrested for a collateral offense; (iii) was released via the MPD's "post & forfeit" procedure; and (iv) was made to pay the collateral amount for that offense as a condition of release.

**193.**  Certification of this class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members of both classes, and injunctive relief against the District will benefit each and every plaintiff and class member.

**194.**  The class is entitled to injunctive relief, for example, setting up an independent monitor to supervise the MPD's release system to ensure that all arrestees entitled to release on citation or bond are offered that release option and to prevent the District from continuing to condition releases on non-refundable payments of money, and other relief as may be just.

**195.**  Certification of a class under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

**196.**  Regarding Mr. Fox and the Post & Forfeit Class, there are no individual questions on the issue of liability, because in practice conditioning release on payment of money (as opposed to bonds) is never constitutional, and alternatively, in practice, the MPD practically never offers citation as a release option to persons arrested on "collateral offenses," and the records in the MPD's computerized arrest database ("CJIS") establish each and every person released by the MPD under its post and forfeit program .

**197.**  Among the questions of law and fact common to the classes are:

    **a.**  whether the District has a policy or practice of requiring persons arrested on "collateral offenses" to pay the collateral to avoid being sent to Superior Court for presentment;

    **b.**  whether the District has a practice of practically never offering citation as a release option to persons arrested on "collateral offenses;"

    **c.**  whether such practices, if found to exist, violate any of the Fourth, Fifth, Sixth or Eighth Amendments;

**d.**     whether plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief;

**e.**     whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages except those who opt out.

**198.** The Post & Forfeit Class is so numerous that joinder of all members is impracticable.  The exact number of Post & Forfeit Class members is unknown to plaintiffs at this time, but figures released by the District of Columbia concede that each year over the last 5 years approximately 5,000 people are released under the MPD administered post and forfeit program.

**199.**  Mr. Fox's "post & forfeit" claim is typical of the claims of the other members of the Post & Forfeit Class, because Mr. Fox and all other members of the Post & Forfeit Class were injured by exactly the same means, that is, by the District's "post & forfeit" release policy or practice.

**200.**  Mr. Fox on behalf of himself and the Post & Forfeit Class will fairly and adequately protect the interests of the members of the Post & Forfeit Class and has retained counsel who is competent and experienced in complex federal civil rights class action litigation.

**201.**  Mr. Fox on behalf of himself and Post & Forfeit Class have no interests that are contrary to or in conflict with those of the class or Post & Forfeit Class.

## SUBSTANTIVE ALLEGATIONS FOR MR. FOX'S CLASS CLAIMS

### Class Count 4
### (§ 1983 Liability of District of Columbia for Violations of Fourth Amendment Rights of Mr. Fox and all other members of the Post & Forfeit Class)

**202.**  Mr. Fox on behalf of himself and the Post & Forfeit Class realleges and incorporates by reference all allegations set forth in this Complaint.

**203.**  Mr. Fox posted his collateral of $35.00 and signed the form a few minutes before or after 22:45 hours Saturday night, December 20, 2008.

**204.**  The result of the District's policies and custom and practices is that the District conditions a person's right to release on payment of money and the "post & forfeit" process adds delay to a person's release once the right to release attaches.

**205.**  The District's policies and custom and practice of inaction, as described above, amounted to deliberate indifference to the Fourth Amendment rights of Mr. Fox and all other members of the Post & Forfeit Class.

**206.**  The District's deliberate indifference as described above was the moving force behind the violations of Mr. Fox and all other members of the Post & Forfeit Class' Fourth Amendment rights.

**207.**  Accordingly, Mr. Fox and all other members of the Post & Forfeit Class are entitled to damages to be determined at trial, and Mr. Fox and all other members of the Post & Forfeit Class are entitled to injunctive relief.

**Class Count 5**
**(§ 1983 Liability of District of Columbia for Violations of Fifth**
**Amendment Rights of Mr. Fox and all other members of the Post & Forfeit**
**Class)**

**208.**  Mr. Fox on behalf of himself and the Post & Forfeit Class realleges and incorporates by reference all allegations set forth in this Complaint.

**209.**  Mr. Fox posted his collateral of $35.00 and signed the form a few minutes before or after 22:45 hours Saturday night, December 20, 2008.

**210.**  The "post and forfeit" payment was not any species of bail.

**211.**  The District's policies and custom and practice of taking "post and forfeit" payments from persons arrested on collateral offenses is an unlawful taking under the due process clause of the Fifth Amendment.

**212.**  The District's policies and custom and practice of taking "post and forfeit" payments from persons arrested on collateral offenses constitutes deliberate indifference to the Fifth Amendment rights of Mr. Fox and all other members of the Post & Forfeit Class.

**213.**  Accordingly, Mr. Fox and all other members of the Post & Forfeit Class are entitled to damages to be determined at trial, and Mr. Fox and all other members of the Post & Forfeit Class are entitled to injunctive relief.

**Class Count 6**
**(§ 1983 Liability of District of Columbia for Violations of Sixth Amendment Rights of Mr. Fox and all other members of the Post & Forfeit Class)**

**214.**  Mr. Fox on behalf of himself and the Post & Forfeit Class realleges and incorporates by reference all allegations set forth in this Complaint.

**215.**  Mr. Fox posted his collateral of $35.00 and signed the form a few minutes before or after 22:45 hours Saturday night, December 20, 2008.

**216.**  The "post and forfeit" payment was not any species of bail.

**217.**  The District required Mr. Fox to make decisions about analyzing the "post and forfeit" process and how it would affect his right to release and the charges against him and whether it was a payment of bail under the Eighth Amendment without benefit of counsel competent in these questions in violation of the Sixth Amendment's right to counsel.

**218.**  The District's policies and custom and practice of taking "post and forfeit" payments from persons arrested on collateral offenses constitutes deliberate indifference to the Sixth Amendment rights of Mr. Fox and all other members of the Post & Forfeit Class.

**219.**  Accordingly, Mr. Fox and all other members of the Post & Forfeit Class are entitled to damages to be determined at trial, and Mr. Fox and all other members of the Post & Forfeit Class are entitled to injunctive relief.

**Class Count 7**
**(§ 1983 Liability of District of Columbia for Violations of Eighth Amendment Rights of Mr. Fox and all other members of the Post & Forfeit Class)**

**220.**  Mr. Fox on behalf of himself and the Post & Forfeit Class realleges and incorporates by reference all allegations set forth in this Complaint.

**221.**  Mr. Fox posted his collateral of $35.00 and signed the form a few minutes before or after 22:45 hours Saturday night, December 20, 2008.

**222.**  The "post and forfeit" payment was not any species of bail.

**223.**  The District's policies and custom and practice of taking "post and forfeit" payments from persons arrested on collateral offenses constitutes deliberate indifference to the Eighth Amendment bail rights of Mr. Fox and all other members of the Post & Forfeit Class.

**224.**  Accordingly, Mr. Fox and all other members of the Post & Forfeit Class are entitled to damages to be determined at trial, and Mr. Fox and all other members of the Post & Forfeit Class are entitled to injunctive relief.

## INDIVIDUAL RELIEF DEMANDS

**WHEREFORE**, Barbara Fox requests:

A.    Compensatory damages of five hundred thousand dollars ($500,000), punitive damages of two hundred thousand dollars ($200,000), costs including reasonable attorney's fees, post-judgment interest, and for such other and further relief as the Court may deem just and appropriate, against Defendants Squires, Boyd, and the District of Columbia, to the maximum extent permitted by law, and demands judgment for relief.

**WHEREFORE**, Hamilton P. Fox, III, requests:

A.    Compensatory damages of one millions dollars ($1,000,000), punitive damages of two hundred thousand dollars ($200,000), costs including reasonable attorney's fees, post-judgment interest, and for such other and further relief as the Court may deem just and appropriate, against Defendants Squires, Boyd, and the District of Columbia, to the maximum extent permitted by law, and demands judgment for relief.

**CLASS RELIEF DEMANDS**

Mr. Fox on behalf of himself and all other members of the <u>Post & Forfeit Class</u>, the <u>Lively Class</u>, and the <u>Delayed Release Class</u> respectfully requests that this Court grant the following relief:

**A.**    Grant a jury trial on all claims so triable.

**B.**    Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Post & Forfeit Class, and designate the Plaintiff and Plaintiff's counsel as the proper representative of, the class consisting of:

**C.**    Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**D.**    Award all named plaintiffs compensatory and consequential damages in an amount to be determined at trial;

**E.**    Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

**F.**    grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| /s/Sean R. Day/s/<br>SEAN R. DAY<br>D.C. Bar No. 452420 | /s/ William Claiborne/s/<br>WILLIAM CLAIBORNE<br>D.C. Bar No. 446579 |
| Counsel for Barbara Fox and Hamilton P. Fox III on Individual Counts | Counsel for Mr. Fox on behalf of himself and putative class members on the class claims |
| 8505 Baltimore Avenue<br>Suite 201<br>College Park, MD  20740<br>301.220.2270 | 717 D Street, NW<br>Suite 210<br>Washington, DC 20004<br>Phone 202.824.0700 |
| sean@dayincourt.net | claibornelaw@gmail.com |

## **JURY DEMAND**

Plaintiffs demand a jury of six as to all claims so triable.


/s/Sean R. Day/s/
SEAN R. DAY
D.C. Bar No. 452420
Counsel for the Plaintiffs on the Individual Claims


/s/William Claiborne/s/
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for the Post & Forfeit Class, Lively Class and the Delayed Release
Class.