## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FOX, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-2118 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Barbara Fox and Hamilton P. Fox, III brought this action against two Metropolitan Police Department officers in their individual capacities and the District of Columbia [Dkt. # 15]. They allege eight causes of action arising from a dispute between Mr. Fox and the officers that ultimately led to Mr. Fox's arrest for disorderly conduct and his release pursuant to a "post-and-forfeit" procedure whereby an arrestee simultaneously posts and forfeits collateral in return for his release from jail without prosecution. Five of the claims (Counts 4–8) are brought solely by Mr. Fox against the District of Columbia, challenging the constitutionality of the post-and-forfeit procedure under Fourth, Fifth, Sixth, and Eighth Amendments to the Constitution of the United States.[1] Mr. Fox has also moved for class certification on those counts [Dkt. # 14]. The District of Columbia has moved to dismiss all claims against it for lack

---

1    Although the amended complaint names both Mr. and Mrs. Fox as plaintiffs, and seeks certification for a class of others, the Court will refer to Mr. Fox as the only plaintiff in Counts 4 through 8 because the amended complaint identifies him as the sole representative plaintiff for those counts. Am. Compl. ¶¶ 231, 237, 242, 253, 259.

of standing and failure to state a claim [Dkt. # 19].[2]  Because the Court finds that the complaint fails to state a claim that the post-and-forfeit policy violates plaintiff's due process rights either facially or as applied, and that the other claims against the District of Columbia have been conceded, the Court will grant the District of Columbia's motion to dismiss Counts 4 through 8.

Plaintiffs have also moved for leave to file a second amended complaint in this case, which retains Counts 1 through 3, but includes additional factual background and expands on the legal theories behind the claims against the District of Columbia.  Because some of proposed amended counts merely restate legally deficient claims from the first amended complaint, the Court will deny leave to amend those claims on futility grounds.  (Counts 5, 5A, 6, 6A, 7, and 8). The Court will grant leave to amend, though, with respect to the two new claims that were not raised in previous versions of the complaint, without prejudice to any responsive motions the defense may choose to file. (Counts 4A and 9).

The District has not moved to dismiss the individual counts, so Mr. and Mrs. Fox will have a full opportunity to pursue their claims against the arresting officers for alleged violations of their constitutional rights during the encounter on the street.  But the challenge to the post-and-forfeit procedure fails, although not for lack of trying.  Plaintiff has now provided the Court with three different versions of a prolix complaint – each longer and more detailed than the one that came before.  The matter has been briefed extensively, and the Court held a lengthy hearing. Yet plaintiff has yet to articulate just what it is that is wrong with offering someone charged with a minor offense *the choice* to contest the charge in court or to pay a small sum and go home.

The fundamental flaw at the heart of plaintiff's case is that while his papers are generously seasoned with strong language connoting wrongdoing – "force," "coerce," "exact,"

---

2       The officers have not moved to dismiss, and so the three claims brought against them (Counts 1–3) are not in dispute here.

"deprive," and "take," and the allegations all turn upon the city's alleged policy of "making" arrestees pay money, there simply was no coercion, taking, or deprivation inherent in the voluntary exchange that was offered and accepted in this case.  Moreover, plaintiff was fully apprised of, but elected to forego, his right to seek to set aside the forfeiture and contest the arrest.  Plaintiff makes extensive references to evidence adduced in another case which might be marshaled in support of allegations that the District remains deliberately indifferent to a pattern of disorderly conduct arrests made without probable cause, but there is no count in either the first or the second amended complaint that actually seeks to impose municipal liability for that sort of unconstitutional deprivation of liberty, and none of that has anything to do with all of the other offenses for which post-and-forfeit is an available option.  The gravamen of every one of the class claims – as stated and as proposed to be restated – is that there is something abhorrent, unlawful, and unconstitutional about the post-and-forfeit procedure itself.  But with respect to that particular practice, plaintiff has simply failed to state a claim upon which relief can be granted.

## BACKGROUND

### A.  Factual Background

The events leading to this case began when Mr. Fox was approached by a police officer from the Metropolitan Police Department ("MPD") while sitting in his idling car in a "no parking" zone waiting for his wife to come out of a nearby drug store.  Am. Compl. ¶ 19.  An Officer B.L. Squires pulled up behind the car and told Mr. Fox that he needed to move.  *Id.* ¶¶ 23–26.  Since he was "standing," and not "parking," Mr. Fox reasoned that he was in compliance with the signs governing the location, and he took issue with the officer's instructions.  The officer was unmoved, Mr. Fox asked to speak to a supervisor, and ultimately,

the officer would not permit the Foxes to leave the scene even after Mrs. Fox had returned to the car.  Numerous other officers arrived, and according to the complaint, "Mr. Fox then made a remark to an arriving officer, within earshot of Officer Squires and other officers, that was derogatory of Officer Squires' intelligence and competence."  *See id.* ¶¶ 24–33.  It is not necessary to recite all of the details of the stand-off that ensued here.  What matters for purposes of the instant motions is that Mr. Fox was ultimately issued a parking citation, placed under arrest, and transported to the police station, where he was placed in a holding cell.  *Id.* ¶¶ 163–164.  He was charged with the D.C. Code offense of "disorderly conduct – loud and boisterous." D.C. Code § 22-1321(1); Am. Compl. ¶ 15.

Mr. Fox alleges that while he was in the holding cell, he witnessed a police officer ask another arrestee whether he was willing to post thirty five dollars to be released.  Am. Compl. ¶ 167.  When the man declined to pay, the officer allegedly told him, "OK, you're going to Central Cellblock" and he was hauled away.  *Id.* ¶ 169.

A few hours after Mr. Fox was put in the holding cell, an officer brought in Mrs. Fox and asked her "whether she would pay Mr. Fox's $35.00 'post & forfeit' amount."  Am. Compl. ¶ 173.  Although Mrs. Fox responded "yes," she apparently left the jail without paying the money and, instead, Mr. Fox was given a "post-and-forfeit" form to sign and allowed to pay the thirty five dollars himself.  *Id.* ¶¶ 179, 186, 196.

The form, which Mr. Fox read, stated the offense he was charge with and indicated that he was being offered the option to post-and-forfeit a collateral.  *Id.* ¶ 180.  The form read:

> You are eligible to elect to forfeit collateral for this charge.  If you elect to forfeit the collateral amount assigned to the charge, you are agreeing to waive your right to a hearing in court, and the case against you will be concluded without an admission of guilt.  However, you will have an arrest record of all charges for which you forfeited collateral.

>Forfeiture is final unless you (or your attorney) file a "Motion To Set Aside Forfeiture" within 90 days from the date of the forfeiture. You may wish to file this motion if you decide to contest the charge at a later date.

*       *       *

>By signing this form, you are acknowledging that it is your choice to elect to forfeit the collateral amount set for this charge, and that by doing so, you are agreeing to waive your right to a hearing in court.

Ex. 3 to Pl.'s Mot. to Certify Class [Dkt. # 14-3].[3] The back of the form stated: "IF YOU ARE ELIGIBLE FOR ONE OR MORE OF THESE EARLY RELEASE OPTIONS, AND YOU DO NOT ELECT ONE, YOU WILL NOT BE RELEASED BEFORE YOU ARE PRESENTED TO COURT ON YOUR CHARGES." Ex. 4 to Pl.'s Mot. to Certify Class [Dkt. # 14-4]. Although the form also described "release on bond" and "citation release," Mr. Fox was not offered either of these options. *Id.*; Am. Compl. ¶ 189.

Mr. Fox signed the form and paid the thirty five dollars. Am. Compl. ¶ 185. He alleges that he finished the administrative procedures incident to arrest no more than fifteen minutes later, and was released from jail about four hours after that. *Id.* ¶¶ 186–87, 199. He alleges that in total, he spent approximately nine hours in jail. *Id.* ¶¶ 164, 199. After his release from jail, Mr. Fox did not exercise his statutory right to seek to have the forfeiture set aside and contest the charges by filing a motion in Superior Court.

Mr. and Mrs. Fox filed the first amended complaint ("complaint") in this action on April 18, 2011. Counts 1, 2, and 3 are filed against the officers in their individual capacities and are

---

3       The Court will consider this document in evaluating the Motion to Dismiss because it finds that it is incorporated into the complaint by reference. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

not at issue here.[4]   Am. Compl. ¶¶ 49–60.   Counts 4 through 8 are filed as class action claims

against the District of Columbia under 42 U.S.C. section 1983 and seek compensatory and

consequential damages as well as injunctive relief.[5]   *Id.* ¶¶ 231–63.   At the March 20, 2012

motion hearing in this case, plaintiff orally conceded Count 4, which alleges that the post-and-

forfeit process adds delay to plaintiffs' release once the right to release attaches, in violation of

their Fourth Amendment rights.   *Id.* ¶¶ 231–36; Rough Tr. (Mar. 20, 2012) ("Tr.") at 26.   Counts

5 and 6 allege that the post-and-forfeit policy constitutes deliberate indifference to plaintiff's

Fifth Amendment due process rights on its face and as applied, respectively.   *Id.* ¶¶ 237–52.

Counts 7 and 8 allege that the post-and-forfeit policy constitutes deliberate indifference to

plaintiffs' Sixth Amendment right to counsel and Eight Amendment bail rights, respectively.   *Id.*

¶¶ 253–63.   Defendant District of Columbia has moved to dismiss the counts against it [Dkt.

# 19].

Plaintiffs have also moved for leave to file a second amended complaint [Dkt. # 27, 30],

which defendant District of Columbia opposes [Dkt. # 29].   Plaintiffs do not seek to change

Counts 1, 2, or 3.   Rather, the proposed second amended complaint contains additional factual

background, adds two new claims (Counts 4 and 9), and restates some of the claims from the

---

4       Plaintiffs previously moved to sever counts 1 through 3 from Counts 4 through 8, arguing in part that the two groups of claims do not arise from the same transaction and do not present common questions of law or fact.   *See* Pl.'s Consent Mot. to Sever Claims [Dkt. # 21].   The motion stated:   "The challenge to the alleged 'post and forfeit' policy and practice does not depend on the legitimacy/illegitimacy of the arrest."   *Id.* at 3.   At the motions hearing, counsel on the class counts distanced himself from that language.   Tr. at 27–28.   The motion to sever was subsequently withdrawn. [Dkt. # 35].

5       While he does not specify what kind of injunctive relief he seeks, the Court will construe it as a request to enjoin the District from using the post-and-forfeit procedure.   The Court might also construe it as a request to order the expungement of the arrest record, but Mr. Fox alleges that his arrest record has already been expunged, Pl.'s Opp. at 2 n.1, and at the March 20, 2012 motions hearing in this case, counsel for the government agreed that the expungement had been granted.   Rough Tr. (Mar. 20, 2012) at 11.

previous version of the complaint (Counts 5, 5A, 6, 6A, 7, and 8).  Proposed Amended Count 4 alleges that the post-and-forfeit policy constitutes an unreasonable seizure, in violation of the Fourth Amendment of the Constitution.  Proposed Second Am. Compl. ¶¶ 243–48.  Proposed Amended Count 9 alleges that the District's use of the post-and-forfeit policy constitutes common law conversion.  *Id.* ¶¶ 301–304.  Proposed Amended Counts 5, 5A, 6, and 6A re-allege the facial and as applied substantive and procedural due process claims.  *Id.* ¶¶ 249–87.  And Proposed Amended Counts 7 and 8 re-allege the Sixth and Eighth Amendment claims.  *Id.* ¶¶ 288–300.

### B.  Legal Background

The D.C. Code expressly grants the MPD the authority to tender an offer to any arrestee charged with certain misdemeanors to "obtain a full and final resolution of the criminal charge" by agreeing to simultaneously post and forfeit an amount as collateral.  D.C. Official Code § 5-335.01(a).  This is referred to as "the post-and-forfeit procedure."  In essence, the option to post and forfeit is analogous to the option to pay a fine in order to resolve the charge and be released from jail quickly.  Posting and forfeiting is not an admission of guilt, and it does not result in a criminal conviction. While the process does not eradicate the record of the original arrest, the statute provides that "[t]he fact that a person resolved a charge using the post-and-forfeit procedure may not be relied upon by any court . . . or agency of the District of Columbia in any subsequent criminal, civil, or administrative proceeding or administrative action to impose any sanction, penalty, enhanced sentence, or civil disability."  § 5-335.01(b).[6]

---

6      As previously noted, Mr. Fox succeeded in having his arrest record expunged in a separate action in Superior Court.  *See supra* note 5.

The collateral amount for each charge is set by the Superior Court of the District of Columbia and, if not forfeited, serves as a security upon release to ensure the arrestee's appearance at trial.  *Id.*  The statute requires that the MPD provide written notice to the arrestee at the time the offer is tendered.  *Id.* § 5-335.01(d).  The notice must include, in relevant part, the identity of the crime to be resolved, and the amount of collateral to be posted and forfeited.  *Id.* § 5-335.01(d)(1).  The notice must also state that the arrestee has the right to choose whether to accept the post-and-forfeit offer or to proceed with the criminal case and a potential adjudication on the merits, and that forfeiture becomes final ninety days after the arrestee signs the notice.[7] *Id.* §§ 5-335.01(d)(2), (6).  During that ninety days, the arrestee or the Office of the Attorney General may file a motion with the Superior Court of the District of Columbia to set aside the forfeiture and proceed with the criminal case.  *Id.* § 5-335.01(d)(6).[8]

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted).  Nevertheless, the Court need not accept inferences drawn by the

---

[7]    Mr. Fox does not dispute that he received a notice that satisfies the statutory requirements; indeed he quotes the notice in his complaint. Am. Compl. ¶ 182.

[8]    Plaintiffs allege that "there is no provision in any General Order, rule or statute for return of the 'collateral' money."  Am. Compl. ¶ 141.  However, the Court reads the provision of D.C. Official Code § 5-335.01 that allows the arrestee to file, and the Superior Court to grant, a motion to "set aside the forfeiture and proceed with the criminal case" as providing for the return of the collateral money if the Superior Court grants the motion.  This interpretation was confirmed by counsel for the District at the motions hearing in this case.  Tr. at 76–77.

plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.  Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  Because "subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 1950, quoting Fed. R. Civ. P. 8(a)(2).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 1949, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (internal citations omitted).

## ANALYSIS

### A.  Subject Matter Jurisdiction

Article III, section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "This limitation gives rise to the doctrines of standing and mootness." *Foretich v. United* States, 351 F.3d 1198, 1210 (D.C.

Cir. 2003). "Lack of standing is a defect in subject matter jurisdiction." *George v. Napolitano*, 693 F. Supp. 2d 125, 128–29 (D.D.C. 2010), citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To establish Article III standing, a plaintiff must demonstrate that "(1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *George*, 693 F. Supp. 2d at 129–30, quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180–81 (2000).

The District moves to dismiss for lack of subject matter jurisdiction on multiple grounds, and it certainly has a point. It is difficult to discern what Mr. Fox's alleged injury is. He claims that his injury is the deprivation of his thirty five dollars in cash. Pl.'s Opp. at 2. However, the facts as alleged show that he chose to post and forfeit the thirty five dollars – rather than proceed with his criminal case – in order to get out of jail more quickly and terminate his case, and that he was fully aware of his options. Furthermore, although he had ninety days to do so, Mr. Fox did not exercise his right to move to have the forfeiture set aside by the Superior Court of the District of Columbia.

"Federal relief may be withheld from persons who have 'deliberately bypassed the orderly procedure of the state courts.'" *Sullivan v. Murphy*, 478 F.2d 938, 963 (D.C. Cir. 1973), quoting *Fay v. Noia*, 372 U.S. 391, 438 (1963). When the plaintiff has failed to "utilize state remedial channels that are both accessible and capable of affording a full measure of relief," he may properly be denied federal relief. *Id.* Here, the D.C. Code provides a remedy whereby an arrestee who has a change of heart in the light of day can seek the return of the forfeited collateral. Mr. Fox failed to exhaust his remedies in the Superior Court because he did not file

such a motion within ninety days of signing the post-and-forfeit notice.  Therefore, the District fairly asserts that he may not now seek compensation for his thirty five dollars from this Court.[9]

But Mr. Fox also seeks injunctive relief on the grounds that the MPD violated his Fourth, Fifth, Sixth, and Eighth Amendment rights, and those of the class, by utilizing post-and-forfeit and accepting payment from arrestees who have not yet had access to counsel and by failing to provide a citation release option.[10]  The Court presumes, then, that the injury he is alleging on behalf of the class is the deprivation of constitutional rights.[11]

But the District argues that even that claim would fail to meet the case or controversy requirement.  For a plaintiff to have standing to request injunctive relief, he must show that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be both real and immediate not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).  In *Lyons*, the Supreme Court held that a plaintiff claiming to have

---

9    In *Sullivan*, the D.C. Circuit found that plaintiffs' failure to file within the ninety day period did not preclude them from federal relief because the District had circulated misinformation about their rights pursuant to the post-and-forfeit policy and thus, the state remedial channels were not sufficiently "accessible."  *See Sullivan*, 478 U.S. at 963.  Here, there is no allegation that plaintiff was misinformed, so this case does not fall within that limited exception to the exhaustion requirement.

10    The complaint does not actually specify what type of injunctive relief Mr. Fox is seeking. However, since the proposed amended complaint contains an express request for an injunction banning the District from implementing any provision of D.C. Code § 5-335.01, the Court will construe the first amended complaint as seeking the same form of equitable relief.  Proposed Second Am. Compl. ¶ 65.  Mr. Fox's opposition to the motion to dismiss explains that the request for equitable relief also includes a request for the expungement of his arrest record if that has not already occurred.  Pl.'s Opp. at 2–3.  Since counsel for the District told the Court that Mr. Fox's arrest record had already been expunged, the Court will not consider that request.

11    In Count 6, he also alleges that post-and-forfeit is used to keep arrestees incarcerated as a form of punishment, in violation of the arrestee's Fifth Amendment rights.  Am. Compl. ¶¶ 243–46.

suffered a past injury, who is seeking to enjoin the government from engaging in the allegedly unconstitutional conduct that caused his harm, lacks standing unless he alleges that he is *likely* to suffer injury in the future from the same conduct. *Id.* at 105–06. In that case, the plaintiff challenged a police officer's use of a "choke hold" as a violation of his substantive due process rights under the Fourteenth Amendment. *Id.* at 99. The Court held that he did not establish the existence of a live case or controversy against the city for injunctive relief because he failed to "establish a real and immediate threat" that he would again be stopped by the police and put in a chokehold. This requirement would only be satisfied by allegations that the plaintiff (1) would have another encounter with the police, and (2) "that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter," or that the city "ordered or authorized police officers to act in such a manner." *Id.* at 105–06. The Court concluded that "[absent] a sufficient likelihood that [Lyons] will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111.

Similarly here, Mr. Fox is alleging a past harm. By the time Mr. Fox filed his complaint, he had already paid the thirty five dollars, the MPD had accepted the money, he had been released from jail, and the ninety day period during which he could have moved to have the forfeiture set aside had already expired. Moreover, he has not alleged that he is likely to have another encounter with the MPD and to be arrested for a collateral offense. However, unlike in *Lyons*, Mr. Fox has alleged that the city authorizes police officers to act in the contested manner on a regular basis. He cites section 5-335.01 of the D.C. Official Code, which authorizes MPD to offer the post-and-forfeit option to people arrested on charges of collateral offenses. Also, the

13

complaint included a request to have the arrest record expunged, a sort of relief that could give rise to a case or controversy.  Thus, plaintiff's claim to standing is not as tenuous as the claim rejected in *Lyons*.

Furthermore, Mr. Fox has filed his complaint on behalf of a class of people who have been subject to the post-and-forfeit procedure in the past as well as those who will be subject to it in the future.  In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court applied the relation back doctrine to allow a plaintiff, who was representing a class in a suit alleging that the county violated the Fourth Amendment rights of people arrested without a warrant by combining probable cause determinations with arraignment procedures, to continue asserting the claims even though they had become moot as to him after the filing of the complaint.  *Id.* at 52–58.

Therefore, since Mr. Fox premises his claim for an injunction on a statute authorizing the police to engage in the challenged conduct in the future, he seeks a form of relief other than the mere return of his forfeited $35, and at least his request for expungement though now moot survives under *Riverside*, the Court will move on to consider the merits of the District's motion to dismiss for failure to state a claim.

### B.  Failure to State a Claim

a. <u>The complaint fails to state a claim that the post-and-forfeit procedure violates the Fifth Amendment on its face.</u>

Count 5 of the complaint alleges that the post-and-forfeit process violates the Fifth Amendment of the Constitution on its face.  Although the first amended complaint does not specify whether Mr. Fox is making a substantive or procedural due process claim, he elaborated on the allegations at some length in his opposition and explained that he had both theories in

14

mind.  The Court will give him the benefit of all inferences in his favor and construe the complaint as alleging both.[12]

i)   <u>Substantive Due Process</u>

Mr. Fox alleges that the post-and-forfeit policy constitutes deliberate indifference to his Fifth Amendment substantive due process rights and those of the class because it authorizes the MPD to deprive arrestees of their money without any legitimate reason.  Pl.'s Opp. at 35.

"[T]he Due Process Clause provides that certain substantive rights – life, liberty and property – cannot be deprived except pursuant to constitutionally adequate procedures."[13] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992) (internal citations omitted).  In other words, there are some interests that are so fundamental that the government cannot invade them even if it follows a seemingly fair process.  Thus, in substantive due process cases, the Supreme Court requires a "careful description" of the asserted fundamental interest to be protected.  *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  And it has certainly never found payment of a small sum to suffice, and particularly not in any circumstance where the payor was offered a choice of whether to pay it or not, and he received a benefit in return.  *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (refusing to find that "a property interest so modest [as a ninety dollar fine] is a

---

12      Counts 5 and 5A of the proposed second amended complaint revise and expand upon the original Count 5 to make the two-pronged theory explicit.

13      Because the District of Columbia is a political entity created by the federal government, it is subject to the Fifth Amendment.  *See Propert v. Dist. of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991), citing *Bolling v. Sharpe*, 347 U.S. 479, 499 (1954).

15

fundamental right" in a case challenging the constitutionality of a ninety dollar traffic fine imposed on the owner of a car that is photographed running a red light).[14]

Even if the Court construes the complaint as alleging the invasion of a liberty interest, and not just a minimal property interest, there is certainly no fundamental liberty interest in being released from jail before presentment the following morning.  And another court in this District has already held that there is no constitutional right to citation release.  *See Huthnance v. District of Columbia*, 793 F. Supp. 2d 183, 202 (D.D.C. 2011); *see also Hunter v. District of Columbia*, -- F. Supp. 2d --, 2011 WL 5529857, at *8 (D.D.C. Nov. 15, 2011).  So, the Court finds that Mr. Fox has not alleged the deprivation of any fundamental interest.

Where there is no fundamental interest at stake, the Court assesses whether the legislation is arbitrary.  *See Idris*, 552 F.3d at 566; *see also TXO*, 509 U.S. at 453–54 (Substantive due process protection is afforded where there is "an arbitrary deprivation of property without due process of law."); *PruneYard Shopping Ctr. v. Robbins*, 447 U.S. 74, 84–85 (1980) ("Under traditional substantive due process analysis, government regulation of property rights will be upheld so long as it is not 'unreasonable, arbitrary, capricious and that the means selected shall have a real and substantial relation to the object sought to be attained.'"); *Hilton Wash. Corp. v. Dist. of Columbia*, 593 F. Supp. 1288, 1290–91 (D.D.C. 1984), citing *Nebbia v. New York*, 291 U.S. 502, 525 (1934).

In arguing that the post-and-forfeit payment is arbitrary, Mr. Fox first attempts to describe what it is.  But in doing that, he devotes more than ten pages of his opposition brief explaining what it is *not*.  Pl.'s Opp. at 16–28. ("The District's exaction of the 'post and forfeit'

---

14      The Supreme Court has found that a fine may be so grossly excessive that it violates the substantive component of due process.  *Cf. TXO*, 509 U.S. at 459.  But here, Mr. Fox is not challenging the collateral *amount*, he is instead challenging the District's ability to offer arrestees charged with a collateral offense the option to post at all.  *See* Pl.'s Opp. at 17–18.

payment is neither a civil forfeiture, a legitimate fine, bail, nor any other legitimate exercise of government power."). At bottom, his substantive due process argument is based on the misguided notion that the District may not accept any kind of payment other than a civil forfeiture, fine, bail, or other payment expressly authorized in the Constitution. *See* Pl.'s Opp. at 17; Tr. at 37–38. Mr. Fox fails to acknowledge that the District has a general police power, which gives it the authority to enact measures to protect the health, safety, welfare, and morals of the community. *See In Re Rail Freight Fuel Surcharge Antitrust Litigation*, 593 F. Supp. 2d 29, 37 (D.D.C. 2008) (States and the District of Columbia "retain traditional police powers to protect health and safety, which [are] reserved to them by the constitution . . . ."); *Bergman v. District of Columbia*, 986 A.2d 1208 (D.C. 2010) (same). So, it suffices to say that the post-and-forfeit payment is in essence a small fine that the District agrees to accept in return for an arrestee's prompt release from jail and the resolution of the charges against him. *See District of Columbia v. Baylor*, 125 Wash. Law Rptr. 1665, 1670 (Aug. 25–26, 1997) (defining the post-and-forfeit payment as "a kind of vicarious fine paid, without either admitting or adjudicating any criminal or other liability") (internal quotation marks omitted).[15]

Mr. Fox asserts that the payment is not a fine because the government may only impose a fine as part of a criminal offense when the fine is "based on a finding in a pre-deprivation hearing of criminal conduct" and "specifically authorized by statute." Pl.'s Opp. at 19. But he does not cite any precedent for his assertion and it does not survive close inspection. First, of course, this sort of payment is expressly authorized by statute. D.C. Official Code section 5-335.01 authorizes the MPD to tender an offer to an arrestee to resolve a petty criminal charge using the post-and-forfeit procedure. Second, the fact that the payment is not based on a finding

---

15      Indeed, the District acknowledges that the payment is somewhere between a type of surety and a fine. Pl's Reply at 11, 11 n.13; Tr. at 74–75.

of criminal conduct in a pre-deprivation hearing does not bear on whether or not the payment is a fine. The absence of a hearing is only relevant to the question of whether the payee receives sufficient process, as Mr. Fox himself pointed out repeatedly throughout his papers and in the motions hearing on this matter. *See* Pl.'s Opp. at 14–15, 29, 35–36; Tr. at 30. And since the payment does not result in a criminal conviction and it cannot trigger any of the collateral consequences of a criminal conviction, it is not appropriately likened to a criminal sentence.

So construing the forfeited collateral that constitutes the post-and-forfeit payment to be some type of fine, the Court must next resolve whether it is arbitrary. The Court finds that it is not. The city has asserted legitimate interests in preventing overcrowding in its jails, conserving its limited prosecutive resources, and clearing crowded court dockets, Def.'s Reply at 19, and it also has an interest in deterring criminal activity. By allowing an arrestee charged with a minor crime to pay a small sum in order to resolve the charge, the government fulfills those goals. Furthermore, the payment is a bargained for exchange whereby both parties obtain a benefit: the arrestee gains both his release and complete finality. He may very well conclude that he would prefer paying the fee to enduring whatever financial or personal burdens might be involved in a time-consuming and possibly embarrassing return to court, or he may simple seek to eliminate the risk of having a misdemeanor conviction on his record. So the District's acceptance of an arrestee's voluntarily tendered collateral is not an arbitrary deprivation of property, but a reasonable one.

And contrary to Mr. Fox's assertion, the procedure itself is not rendered constitutionally infirm for substantive due process purposes simply because some of the people who choose to pay the money may have been arrested without probable cause. The risk of an erroneous

deprivation is one of the factors that the Court weighs in the procedural due process inquiry, not the substantive due process inquiry.[16]

The long history of the post-and-forfeit process further weakens Mr. Fox's substantive due process claim. The Supreme Court has indicated that it approaches requests to strike down longstanding practices under the theory of substantive due process with skepticism. *See Glucksberg*, 521 U.S. at 723 ("To hold for respondents, we would have to reverse centuries of legal doctrine and practice, and strike down the considered policy choice of almost every State); *Reno v. Flores*, 507 U.S. 292, 303 (1993) ("The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it"). Before the post-and-forfeit policy was codified in 2005, the D.C. Superior Court noted that the post-and-forfeit procedure is reminiscent of the "Doomsday Book" compiled in 1086 by William the conqueror of England, and the Board of Judges of the Superior Court promulgated a "Bond and Collateral Book" in November of 1974 in order to implement it in the District of Columbia. *Baylor*, 125 Wash. Law Rptr. at 1670. The court also cited a study which found that seventy-two American cities allowed posting and forfeiting of collateral in traffic cases. *Id.* Given the policy's history and prevalence, this Court is particularly reluctant to strike the policy down on the grounds that it is a constitutionally repugnant violation of plaintiffs' substantive due process rights.[17]

---

16    Furthermore, in a facial challenge, the plaintiff must demonstrate that there would be no instance under which the challenged policy would be lawful and constitutional. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). So, the Court should consider whether it would be unconstitutional in the least controversial cases – the ones where the police had ample probable cause to make the arrest.

17    Mr. Fox's claim also fails if the Court construes it as alleging an unconstitutional "taking" under the Fifth Amendment. First, there is no allegation in the complaint that the forfeited collateral is used for a private purpose, so the Court assumes that Mr. Fox is alleging that his property was taken for a public use, for which he is entitled to "just compensation." But, Mr. Fox fails to allege a "taking" at all. In *Bennis v. Michigan*, 516 U.S. 442 (1996), the Supreme Court held that if the proceeding by which property is transferred from a private citizen

Since Mr. Fox has not shown that it is arbitrary for the government to take a small sum of money from an arrestee who, given the choice to pay or go forward with his case, decides to pay, the Court finds that the post-and-forfeit policy does not on its face violate the substantive due process rights of Mr. Fox or those in his proposed class.

ii)     Procedural Due Process

Mr. Fox next alleges that the post-and-forfeit policy on its face violates procedural due process.  The parties dispute which standard the Court should apply to test the procedural due process claim.

Mr. Fox argues that the test the Supreme Court described in *Mathews v. Eldridge*, 424 U.S. 319 (1976) is applicable here.  There, the Court considered the adequacy of administrative procedures for the termination of Social Security disability benefits.  The Court found that the extent of the procedural protection that due process requires is "flexible" and dependent on the particular situation.  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  And it based the determination of whether the particular procedures are constitutionally sufficient on three factors:  (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

The District, however, points the Court to the later decision of the Supreme Court in *Medina v. California*, 505 U.S. 437 (1992).  In that case, the Court was presented with the

---

to the government does not violate due process, then "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Id.* at 456.  Since this Court has already found that the post-and-forfeit policy does not violate due process, the District is not required to provide compensation under *Bennis*.

question whether the Due Process Clause permits a state to require that a defendant who alleges that he is incompetent to stand trial bears the burden of proving so by a preponderance of the evidence.  *Id.* at 439.  But rather than apply the *Matthews* test, the Court held that preventing and dealing with crime is so much the business of the states that courts should be reluctant to overturn a state criminal procedure "unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id.* at 445 (internal quotation marks omitted).  In doing so, the courts exercise "substantial deference to legislative judgments."  *Id.* at 446.

Mr. Fox tries to distinguish the instant case from *Medina*, arguing that the issue here "is not a traditional criminal procedure rule, but a novel system intended to 'supplement' the common law system . . . ."  Pl.'s Opp. at 40.  The Court finds this distinction unavailing – the post-and-forfeit policy sets out a procedure that the MPD follows in dealing with certain people arrested on criminal charges, so it is squarely a rule of criminal procedure.  But regardless of which test the Court applies, it comes to the same conclusion:  the post-and-forfeit procedure is adequate to satisfy procedural due process concerns.

The post-and-forfeit policy satisfies the *Medina* standard because Mr. Fox has not alleged that it violates any fundamental principle of justice.  In light of the District's longstanding practice, Mr. Fox does not offer any historic basis for why the Court should find it to be unconstitutional.  *See* 505 U.S. at 446–448 (the first inquiry is whether there is a historical basis for concluding that a policy violates due process).  And Mr. Fox also fails to proffer any colorable basis for why a policy that allows the MPD to offer someone a means to resolve his charge *if he so chooses* offends any principle of "fundamental fairness."  *See id.* at 448 (the second inquiry is whether the policy "transgresses any recognized principle of 'fundamental

fairness' in operation").  There is nothing unfair about being given the choice to pay a reasonable fine to resolve the charge of a petty offense, particularly where the payer has ninety days to think it over and change his mind, and the payment, once final, does not result in a record of conviction.

The post-and-forfeit policy also satisfies the *Mathews* test.  Mr. Fox offers two potential private interests that are at issue here:  1) the arrestee's interest in the small collateral sum of money, and 2) his interest in regaining his liberty.  As to the first, the interest is weak because it is a very small amount of money at stake.  Next, the risk of an erroneous deprivation is very small.  If the arrestee thinks that his arrest has been made without probable cause, he is not required to pay.  And moreover, even if he does choose to pay, he has ninety days afterward to determine – either on his own or after consulting an attorney – that he should have challenged the charge and to move to set aside the forfeiture and proceed with the charge against him.  The addition of a pre-deprivation hearing, therefore, would not lower the risk of an erroneous deprivation very much, if at all.  Finally, the government has legitimate interests in preventing overcrowding of its jails, and not expending its limited resources on prosecuting petty offenses.  So, the deprivation of property here does not warrant any additional procedure.[18]

Furthermore, the alternative to payment – remaining in jail until being presented for a preliminary hearing – does not warrant additional procedure.  *County of Riverside v. McLaughlin*, 500 U.S. 44, 55–56 (1991) establishes that the Fourth Amendment permits the reasonable postponement of a probable cause determination, even up to forty eight hours.  Mr.

---

[18]    The Supreme Court has held that an individual must be given the opportunity for a hearing "before he is deprived of any significant property interest."  *Cleveland Bd. of Educ. v. Laudermill*, 470 U.S. 532, 542 (1985).  However, the Court has never found that such a small sum of money is a "significant property interest," particularly where the payee is given the option not to pay.

Fox's complaint does not allege that the post-and-forfeit policy increases the time it takes an arrestee who chooses not to post and forfeit to obtain a probable cause determination, let alone that such time is unreasonable.[19]

> b. <u>The complaint fails to state a claim that the post-and-forfeit procedure as applied violates the right to procedural or substantive due process guaranteed by the Fifth Amendment.</u>

While Count 5 was an attack on the facial validity of the procedure, Count 6 of the amended complaint alleges that the post-and-forfeit violates the Fifth Amendment's due process protections as applied to Mr. Fox and the other members of the class. Am. Compl. ¶¶ 242–52. Again, here, the Court will give Mr. Fox the benefit of the doubt and treat the Count as alleging violations of both substantive and procedural due process.

In the paragraphs laying out the as-applied claim, Mr. Fox avers that the District maintains a policy of arresting people on disorderly conduct charges without probable cause. Am. Compl. ¶ 243.[20] He also suggests that the procedure has the effect of shielding those arrests from scrutiny. *Id.* ¶ 245. But ultimately, it is not the allegedly invalid arrests (or, as needed for municipal liability under section 1983, the city's deliberate indifference to a risk of such constitutional violations, *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2000)), that animate Count 6. The complaint does not contain a due process claim premised upon the conduct of the officers on the street.[21]

---

19      Even if Count 4 of the complaint can be construed to allege that, Mr. Fox has expressly conceded Count 4. Tr. at 26.

20      The proposed second amended complaint expands on this allegation. *See, e.g.*, Proposed Second Am. Compl. ¶ 265 ("The District of Columbia, through the MPD, fails to train officers in how to apply the disorderly conduct statute.").

21      *See* plaintiffs' own Motion to Sever, which expressly states that "[t]he challenge to the alleged 'post-and-forfeit' policy and practice does not depend on the legitimacy/illegitimacy of the arrest." Pls.' Consent Mot. to Sever Claims at 3. As the Court noted above, Mr. Fox's

What Mr. Fox goes on to allege in Count 6 is that:

- The District of Columbia maintains a policy, custom or practice of offering post-and-forfeit to persons arrested on disorderly conduct, without offering citation release or collateral/bail release;

- That policy, custom, or practice is implemented when the officers have no expectations that criminal charges will be pressed against the arrestee;

- The District fails to adequately train MPD officers regarding the proper use of post-and-forfeit (*i.e.* that it should not be used as a tool to keep arrestees incarcerated) and to adequately supervise their use of the procedure;

- The lack of adequate training and supervision leads police to use the post-and-forfeit as a form of punishment, in violation of the arrestee's Fifth Amendment rights;

- The District had actual or constructive knowledge that officers were misusing post-and-forfeit at the time of Mr. Fox's arrest;[22]

- The post-and-forfeit policy and the failure to adequately train or supervise reflect a deliberate indifference to the constitutional rights of arrestees.

Am. Compl. ¶¶ 244–250.  But this Count fails for the same reasons that the facial claim fails.

Giving arrestees the choice between paying a small sum of money to resolve their charges or remaining in jail until they are presented in court – for a length of time which is not alleged to be unconstitutional – is not an unconstitutional "punishment."  As the Court already stated, neither citation release nor release before a probable cause determination are constitutional rights.  In other words, Mr. Fox does not allege that the way this policy is being implemented should lead the Court to analyze it differently from the way it analyzed it for purposes of the facial challenge.

This is so even though Mr. Fox alleges that some of the class members were or will be arrested without probable cause.  All class members are free to contest the charges and put the

---

attorney expressly disclaimed this statement at the motions hearing.  *See supra* note 3. Nonetheless, the Court finds it notable.

22      The amended complaint actually states "[a]t the time of Ms. Smith's arrest," but the Court will assume this is a typo and that the complaint is supposed to refer to Mr. Fox's arrest.

government to its proof for ninety days even if they initially avail themselves of the post-and-forfeit option.   Class members are also free to bring civil actions to challenge the constitutionality of their arrests in Court, and the Foxes' claims on those grounds survive this motion.   Some individuals may claim that the District should be liable for unconstitutional arrests caused by its alleged indifference to an alleged ongoing practice of arresting people on charges of disorderly conduct without probable cause, just as Ms. Huthnance did.   *See Huthnance v. District of Columbia*, 793 F. Supp. 2d 183 (D.D.C. 2011).  But that is not this case.

Because the Court finds that Mr. Fox fails to allege a predicate constitutional deprivation, it need not reach the District's argument that plaintiff fails to establish *Monell* liability for his section 1983 claims.

       c.   <u>The District's argument that the complaint fails to state a claim that the post-and-forfeit procedure violates the Sixth or Eight Amendments is conceded.</u>

Mr. Fox does not respond to the District's argument that Counts 7 and 8 should be dismissed for failure to state a claim, so the Court will treat these two counts as conceded for purposes of the first amended complaint.  *See Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.") (internal citations omitted).

Therefore, the Court will grant the District of Columbia's motion to dismiss the counts against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### C. Motion for Leave to Amend

Plaintiffs have also moved for leave to file a second amended complaint.[23]  According to

Fed. R. Civ. P. 15(a)(2), the Court should "freely give leave [to amend] when justice so

requires."  But the decision to grant leave to file the amended complaint is not automatic.  The

Court may exercise its discretion to deny leave to amend where there is "undue delay, bad faith,

undue prejudice to the opposing party, repeated failure to cure deficiencies or futility."

*Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999), citing *Foman v. Davis*, 371

U.S. 178, 182 (1962).

Defendant District of Columbia argues that the Court should deny plaintiffs' motion

because the Court has already granted leave to amend once in this case and a second amendment

would cause undue prejudice to the District, and because the proposed amendments are futile.

The Court acknowledges that the District has already moved to dismiss two previous versions of

plaintiffs' complaint, and it is sympathetic to defendant's position that allowing plaintiffs to

amend again would require the District to start from scratch yet again.  What's more, the

proposed second amended complaint reasserts several claims that the District has already moved

to dismiss in previous versions of the complaint on the basis that they fail to state a claim, and

which plaintiffs conceded by failing to respond to the District's arguments (*e.g.* Counts 7 and 8

of the first amended complaint).  But even so, the Court still might have been inclined to find it

in the interest of justice to grant leave to amend for a second time if plaintiffs' proposed

amendments actually cured the deficiencies in the previous versions of the complaint.  That is

not the case.

---

23     Although the motion for leave to amend was originally filed only by Mr. Fox, [Dkt. # 27], plaintiffs filed a notice on November 3, 2011 clarifying that Mrs. Fox joins in the motion to amend [Dkt. # 30].  Like the first amended complaint, Mr. Fox is the only representative plaintiff alleging that the District violated his constitutional rights in Counts 4 through 9.

Therefore, the Court will deny in part plaintiffs' motion for leave to file a second amended complaint insofar as it proposes to assert proposed amended Counts 5, 5A, 6, 6A, 7, and 8. However, since neither party has provided any briefing on the merits of proposed added Counts 4A and 9, the Court will grant plaintiff leave to amend the complaint to add those two counts. The District will be permitted to file its answer or responsive pleading, including any appropriate motion to dismiss, in the time permitted by the rules.

### a.   Amended Counts 5, 5A, 6, and 6A

Counts 5, 5A, 6 and 6A in the proposed complaint are revised versions of what were Counts 5 and 6 in the first amended complaint – the facial and as applied due process claims. Plaintiffs have revised the Counts by separating the substantive and procedural claims into separate subparts of the Counts. They also added more detailed factual background related to the District's alleged policy of making disorderly conduct arrests without probable cause, and the implementation of the post-and-forfeit policy. Proposed Second Am. Compl. ¶¶ 67–173. However, the substance of Mr. Fox's claims remains the same, with the same deficiencies.

A court does not abuse its discretion if it denies leave to amend or supplement based on futility. *See, e.g.*, *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (agreeing with the district court that an amendment was futile when the facts alleged in the complaint "establish[ed] beyond doubt that the Government did not violate [plaintiff's] due process rights"); *Ross v. DynCorp*, 362 F. Supp. 2d  344, 364 n.11 (D.D.C. 2005) ("While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint 'freely,' it need not do so where the only result would be to waste time and judicial resources. Such is the case where the Court determines, in advance, that the claim that a plaintiff plans to add to his or her complaint must fail, as a matter of law . . . ."); *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C.

2002) ("A court may deny a motion to amend the complaint as futile when the proposed complaint would not survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss."); *Ruffalo v. Oppenheimer & Co.,* 987 F.2d 129, 132 (2d Cir. 1993) (holding that leave to amend was properly denied on futility grounds since new pleading failed to allege any additional significant facts). *See also* 3 *Moore's Federal Practice*, § 15.15[3] (Matthew Bender 3d ed.) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

Count 5 alleges that the post-and-forfeit policy violates class members' substantive due process rights on its face because the District has no constitutional power to "take the money" of arrestees, and that it violates their procedural due process rights because it provides inadequate process prior to the deprivation.  Proposed Second Am. Compl. ¶¶ 249–262.  These claims fail for the same reasons that they failed in the first amended complaint, and plaintiff's additional factual assertions do not save them.  Therefore, amended Counts 5 and 5A are futile.

Count 6 alleges that the District's failure to adequately train or supervise the MPD regarding post-and-forfeit leads police officers "frequently to use post and forfeit as a form of punishment, in violation of arrestees' Fifth Amendment rights."  *Id.* ¶ 270.  Here too, plaintiff fails to cure the deficiencies in the first amended complaint.  Rather than alleging that the *arrest* results in an unconstitutional deprivation of liberty, he alleges that the police's acceptance of payment pursuant to the post-and-forfeit policy is an unacceptable punishment.  For all the reasons described above, the receipt of payment does not violate due process.  So his amended Counts 6 and 6A are futile as well.

b.   Amended Counts 7 and 8

Mr. Fox's proposed amended Counts 7 and 8 reassert Counts 7 and 8 from his first amended complaint.  In its motion to dismiss the first amended complaint, the District argued that those counts failed to state a claim.  Plaintiffs did not respond to those arguments, leading the Court to conclude that they had been conceded, *see supra* p. 25, so it would be prejudicial to the District for the Court to grant plaintiff another bite at the apple.  But the Court finds proposed amended Counts 7 and 8 to be futile in any event, and it will deny plaintiffs leave to assert them on that basis.

i.   Amended Count 7 fails to state a claim.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI. The right does not attach, however, until prosecution is commenced, "that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotation marks omitted).  Plaintiff does not allege that adversary judicial criminal proceedings had commenced at the time he elected to post and forfeit.  Instead he alleges that that the presentation of the post-and-forfeit option required Mr. Fox to "make decisions about the disposition of his case" including "how the post and forfeit would affect his right to release and the charges against him and whether it was a payment of bail under the Eight amendment and how it would affect his right to seal his arrest records."  Proposed Second Am. Compl. ¶¶ 291–92.

However, "[t]he purpose of the Sixth Amendment counsel guarantee – and hence the purpose of invoking it – is to 'protec[t] the unaided layman at critical confrontations' with his

'expert adversary,' the government *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." *McNeil*, 501 U.S. at 177–78, quoting *United States v. Gouveia*, 467 U.S. 180, 189 (1984).   And the adverse positions solidify only when "the government has committed itself to prosecute." *Gouveia*, 467 U.S. at 189.   Plaintiff presents nothing that would show that at the time the arrestee elects to post and forfeit, the government has committed itself to prosecute.   The statute makes clear that election does not result in a criminal record, and payment is not an admission of guilt.   The policy simply allows the arrestee to resolve the matter *before* the government decides whether to prosecute. Moreover, the procedure permits the arrestee to avail himself of counsel later and move to set aside the forfeiture he decided to undertake while still unrepresented.   Therefore, plaintiff fails to state a claim that the policy violates the Sixth Amendment rights of Mr. Fox or any of the class plaintiffs.

ii.   Amended Count 8 fails to state a claim.

Proposed amended Count 8 alleges that the post-and-forfeit payment is "not any species of bail," and so the District's policy of "taking post and forfeit payments from arrestees charged with collateral offenses constitutes deliberate indifference to the Eight Amendment bail rights of Mr. Fox and all other members of the class."   Proposed Second Am. Compl. ¶¶ 296–300.   The precise nature of plaintiff's Eight Amendment claim is somewhat elusive, but the District suggests in its motion to dismiss the first amended complaint that the only logical conclusion is that plaintiff is asserting that Mr. Fox had a right to bail and was refused it.

The Eight Amendment prevents the government from requiring excessive bail.   U.S. Const. amend. VIII.   However, Mr. Fox chose to post and forfeit before he was presented before a judicial officer – when bail is properly set.   *See* 18 U.S.C. § 3142(f); *see also United States v.*

*King*, 818 F.2d 112, 114–15 (1st Cir. 1987) ("[T]he purpose of the requirement of an immediate detention hearing is to guarantee a speedy bail determination.") (internal quotation marks omitted).  The Supreme Court has never found that by not offering bail *before* the preliminary hearing – where the duration of the pre-hearing detention does not violate the Constitution – the government violates the arrestee's Eight Amendment rights, and this Court declines to do so.[24]

        c.   <u>Amended Counts 4A and 9</u>

Plaintiffs also seek to add two new claims:  that the post-and-forfeit policy constitutes an unreasonable seizure, in violation of the Fourth Amendment (Count 4), and that it constitutes common law conversion because the District "takes money" from arrestees (Count 9).  While the District argues generally that plaintiffs' new claims are futile, it does not substantively address these two counts.  The Court declines to dismiss these counts prospectively on the basis of futility when it has not been presented with a clear legal basis for why they are futile.  Therefore, the Court will allow plaintiffs to file a second amended complaint containing the revised factual allegations, proposed ¶¶ 1–52, 65–242, proposed Counts 1, 2, 3, 4A and 9, ¶¶ 53–64, 243–48, 301–04, and the relief demands.  It will deny plaintiff leave to assert proposed amended Counts 5 through 8, ¶¶ 249–300.

---

24      Alternatively, if plaintiffs are asserting that the payment was in essence a payment of excessive bail, the Court still finds that it fails to state a claim.  The post-and-forfeit payment is not bail at all, and it is hardly excessive.  Another interpretation might be that plaintiff is asserting that the Constitution permits bail, but this is not bail, so it is unconstitutional.  But the fact that something is not expressly authorized in the Bill of Rights does not make it unconstitutional.

**CONCLUSION**

Because plaintiffs have conceded Counts 4, 7, and 8 of their first amended complaint and fail to state a claim in Counts 5 and 6, the Court will grant defendant District of Columbia's motion to dismiss Counts 4 through 8 of the first amended complaint. The Court will also grant in part and deny in part plaintiffs' subsequent motion for leave to file a second amended complaint. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 30, 2012