UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
BARBARA FOX, *et al.*,           )
                                 )
           Plaintiffs,            )
                                 )
     v.                           )     Civil Action No. 10-2118 (ABJ)
                                 )
DISTRICT OF COLUMBIA, *et al.*,  )
                                 )
           Defendants.            )
_____)

# MEMORANDUM OPINION

Plaintiffs Barbara Fox and Hamilton P. Fox, III have filed an action that includes claims against two Metropolitan Police Department officers, Officer Squires and Sargent Boyd, in their individual capacities. Sec. Am. Compl. [Dkt. # 39] ¶ 5. They allege three causes of action arising from a dispute between Mr. Fox and the officers that ultimately led to Mr. Fox's arrest for disorderly conduct and his release pursuant to a "post-and-forfeit" procedure whereby an arrestee simultaneously posts and forfeits collateral in return for his release from jail without prosecution.[1] *Id.* ¶¶ 53–64. Specifically, Mrs. Fox alleges that Sargent Boyd violated her Fourth Amendment rights (Count 1), *id.* ¶ 55, and Mr. Fox alleges that both officers violated his First Amendment (Count 2) and Fourth Amendment (Count 3) rights, *id.* ¶¶ 59, 63. All three counts arise under 42 U.S.C. § 1983. *Id.* ¶ 2. Defendants have moved for judgment on the pleadings on the grounds that they are entitled to qualified immunity. *See* Def. Boyd Mot. for J. on the Pldgs.

---

1   Mr. Fox also brought a class action against the District of Columbia challenging the constitutionality of the post and forfeit procedure. First Am. Compl. [Dkt. # 15] ¶¶ 231–63; Sec. Am. Compl. ¶¶ 243–52. On March 30, 2012 and February 15, 2013, the Court granted the District's motions to dismiss the counts against it. Order [Dkt. # 36]; Order [Dkt. # 64]; *see also* Mem. Op. [Dkt. # 37]; Mem. Op. [Dkt. # 66].

[Dkt. # 47] ("Boyd Mot.") at 1–2; Def. Squires Mot. for J. on the Pldgs. [Dkt. # 48] ("Squires Mot.") at 1–2.  The Court will grant Sargent Boyd's motion with respect to Count 1 because the factual allegations in the complaint do not plausibly suggest that he violated Mrs. Fox's clearly established Fourth Amendment rights.  However, the Court will deny defendants' motions to dismiss Counts 2 and 3 because the pleadings do not contain sufficient facts for the Court to determine as a matter of law whether the officers had probable cause to arrest Mr. Fox or whether the arrest was retaliatory.  This ruling is without prejudice to future dispositive motions on those grounds; the holding of the Court today is simply that the determination of whether defendants are entitled to qualified immunity for their arrest of Mr. Fox must await further development of the factual record.

## BACKGROUND

The following facts are taken from the second amended complaint, and defendants do not dispute them for the purposes of their motions.  *See* Boyd Mem. in Supp. of Mot. for J. on the Pldgs. [Dkt. # 47] ("Boyd Mem.") at 2 n.2; Squires Mem. in Supp. of Mot. for J. on the Pldgs. [Dkt. # 48] ("Squires Mem.") at 2 n.2.  On Saturday, December 20, 2008, around 5:00 p.m., Mr. Fox drove Mrs. Fox to the CVS Pharmacy at 661 Pennsylvania Avenue SE, to pick up some medication.  Sec. Am. Compl. ¶ 23.  After dropping his wife off, Mr. Fox pulled around onto D Street near 7th Street.  *Id.* ¶ 24.  There were two parking signs at that location:  the upper sign had an arrow pointing east and read "No Standing or Parking Anytime"; and the lower sign had an arrow pointing west and read "No Parking/Loading Zone/For Commercial Vehicles Only/7:00 a.m. to 6:30 p.m./Monday–Saturday."  *Id.* ¶ 25.  Mr. Fox moved his car to the "No Parking/Loading Zone" on the west side of the sign and remained in his vehicle with his engine running as he waited for Mrs. Fox to return.  *Id.* ¶ 26.

Officer Squires pulled up behind Mr. Fox in his marked police vehicle and said something over his vehicle sound system that Mr. Fox could not understand. *Id.* ¶ 27. Mr. Fox then exited his car and walked over to Officer Squires. *Id.* When he reached the police car, Officer Squires informed him that he was not allowed to park in front of the "No Parking/Loading Zone" sign. *Id.* ¶ 28. Mr. Fox argued that he "was not parked, he was standing while waiting for his wife who was in the CVS." *Id.* ¶ 29. Unpersuaded, Officer Squires told Mr. Fox: "Gotta move your car, Sir." *Id.* ¶ 30. Mr. Fox, who was, as he puts it, "incredulous as the street signs were plainly understandable, asked to speak with a supervisor to discuss the matter." *Id.* ¶ 31. Officer Squires told Mr. Fox that he could stand on the sidewalk to wait for a supervisor, and Mr. Fox stood there for about fifteen minutes. *Id.* ¶ 32. At that time, Mrs. Fox returned from the pharmacy, asked what was happening, and got into the vehicle. *Id.* ¶ 33. Mr. Fox waited for a few more minutes for the supervisor but when no one arrived, he got into his car and started to leave because in his view, "the parking issue was moot" at that point. *Id.*

As Mr. Fox began to leave the scene, Officer Squires activated his siren. Sec. Am. Compl. ¶ 33. Mr. Fox stopped and again walked over to the police car. *Id.* ¶¶ 33–34. Officer Squires explained that since Mr. Fox had asked to speak with a supervisor, he had to wait for one. *Id.* ¶ 34. At that time, Sargent Boyd and other officers arrived on the scene. *Id.* ¶ 35. As the complaint recounts, "Mr. Fox then made a remark to an arriving officer, within earshot of Officer Squires and other officers, that was derogatory of Officer Squires' intelligence and competence." *Id.* ¶ 36. Mr. Fox then moved to the back bumper of his vehicle to wait for a supervisor and none of the officers objected to his standing there. *Id.* ¶ 37.

While Mr. Fox was waiting, Officer Squires informed Sargent Boyd that Mr. Fox "ha[d] an attitude problem." *Id.* ¶ 38. Thereafter, Sargent Boyd walked over to Mr. Fox and told him to

put his hands behind his back. *Id.* ¶ 39. Mr. Fox asked why, but Sargent Boyd refused to explain, and he repeated the instruction adding, "That's the second time I told you." *Id.* Mr. Fox obeyed and was handcuffed. *Id.* A higher-ranking officer then arrived on the scene and said "[y]ou asked for an official, I'm the official." *Id.* ¶ 40. Mr. Fox, who was already in handcuffs, responded that "it was a little too late for that." *Id.*

At that point, Mrs. Fox stepped out of her vehicle and asked what was happening, but she was ordered to get back into the car. *Id.* ¶ 41. She returned to the car and rolled down her window. *Id.* As Sargent Boyd approached, Mrs. Fox again asked what was going on, and Sargent Boyd told her to "[s]hut up." *Id.* ¶ 42. Mrs. Fox repeated her question for the third time and Sargent Boyd told her that if she did not remain quiet, he would arrest her. *Id.* Mrs. Fox then started crying and asked why she could not ask any questions. *Id.* ¶ 43. Sargent Boyd instructed her to get out of the car and put her hands on the vehicle. *Id.* Mrs. Fox complied and Sargent Boyd yelled "We don't play!" *Id.* Sargent Boyd and Officer Squires completed Mr. Fox's arrest, and he was transported from the area. *Id.* ¶ 44. "In that context, Sgt. Boyd said sarcastically to Mrs. Fox as he was leaving, 'Do you have any more questions now?'" *Id.* After Sargent Boyd left the scene, the remaining officers "demanded Mrs. Fox's driver's license, called in her name to the police department, caused her to be unable to leave, then gave the license back to her and let her leave." *Id.* ¶ 45. Mr. Fox was arrested on a charge of disorderly conduct and given a $50 parking ticket. *Id.* ¶¶ 48–49. Plaintiffs allege that on October 18, 2010, the D.C. Superior Court sealed Mr. Fox's arrest record based on "actual innocence" and found "by clear and convincing evidence that [Mr. Fox] did not commit the offense for which he was arrested." *Id.* ¶ 20 (alteration in original).

On December 15, 2010, Mr. and Mrs. Fox sued defendants in their individual capacities alleging that: (1) Sargent Boyd stopped and detained Mrs. Fox in violation of the Fourth Amendment; (2) both defendants violated Mr. Fox's First Amendment right to freedom of expression; and (3) both defendants violated Mr. Fox's Fourth Amendment right to be free from unreasonable searches and seizures.[2] On August 8, 2012, defendants moved for judgment on the pleadings on the grounds that they are protected by qualified immunity. Boyd Mot. at 1–2; Squires Mot. at 1–2; *see also* Defs.' Combined Reply in Supp. of Mots. for J. on the Pldgs [Dkt. # 57] ("Defs.' Reply"). Plaintiffs oppose the motions. Pls.' Combined Opp. to Mots. for J. on the Pldgs. [Dkt. # 51] ("Pls.' Opp.").

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Rule 12(c) may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Put another way, "[i]f there are allegations in the complaint which, if proved, would provide a basis for recovery, the Court cannot grant judgment on the pleadings." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (citations and quotation marks omitted).

"The standard of review for such a motion is essentially the same as the standard for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Longwood*, 157 F. Supp. 2d at 66–67. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

2   Although plaintiffs have amended their complaint twice, the counts against Sargent Boyd and Officer Squires have not changed from the original complaint to the second amended complaint. *Compare* Compl. [Dkt. # 1] ¶¶ 49–60, *with* Sec. Am. Compl. ¶¶ 53–64.

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*. In evaluating a motion for judgment on the pleadings under Rule 12(c), the court may consider facts alleged in the complaint as well as documents attached to or incorporated by reference in the complaint. *Qi v. FDIC*, 755 F. Supp. 2d 195, 199–200 (D.D.C. 2010).

## ANALYSIS

Sargent Boyd and Officer Squires contend that they are entitled to judgment on the pleadings on all three counts because they are protected by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a defendant's claim to

qualified immunity, a plaintiff must establish that (1) the defendant's conduct violated a constitutional or statutory right, and (2) the "right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232. The analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244, quoting *Wilson v. Layne*, 526 U.S. 603 (1999). This standard, "when properly applied . . . protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2085 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### A.  Count 1: Mrs. Fox v. Sargent Boyd (Fourth Amendment Claim)

Count 1 alleges that Sargent Boyd violated Mrs. Fox's Fourth Amendment rights by participating in her detention and ordering her to get out of the vehicle and put her hands on the car during Mr. Fox's arrest. Sec. Am. Compl. ¶¶ 43, 52, 55. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To establish an unlawful seizure under the Fourth Amendment, Mrs. Fox must demonstrate: (1) that she was seized; and (2) that the seizure was unreasonable. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61–62 (1992).

Sargent Boyd does not and cannot dispute that Mrs. Fox was "seized" during the incident. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009), quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007) ("For the duration of a traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers."). Nonetheless, he is entitled to qualified immunity for that action because his seizure of Mrs. Fox was reasonable under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny.

7

In *Terry*, the Supreme Court held that "an investigatory stop (temporary detention) . . . may be conducted without violating the Fourth Amendment's ban on unreasonable . . . seizures . . . if . . . the investigatory stop [is] lawful." *Johnson*, 555 U.S. at 326. In a traffic-stop setting, the requirements for a *Terry* stop "is met whenever it is lawful for the police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Johnson*, 555 U.S. at 327.

Here, the allegations in plaintiffs' own complaint demonstrate that they were lawfully detained for violating at least one D.C. traffic regulation. 18 D.C.M.R. § 2402.6 prohibits parking in a commercial loading zone. In the second amended complaint, plaintiffs admit that on a Saturday around 5:00 p.m., Mr. Fox pulled up in front of a "No Parking/Loading Zone/For Commercial Vehicles Only/7:00am to 6:30pm/Monday-Saturday" sign "and remained in his standing and running vehicle with the lights on while he waited for Mrs. Fox to return" from the pharmacy. Sec. Am. Compl. ¶¶ 23–26. Under 18 D.C.M.R. § 9901, parking is "the standing of a vehicle, whether occupied or not, other than temporarily for the purpose of, and while actually engaged in, loading or unloading merchandise or passengers." Therefore, Mr. Fox violated 18 D.C.M.R. § 2402.6 because he stopped his car for a period of time in a "No Parking" commercial

loading zone, and he was not "actually engaged in, loading or unloading merchandise or passengers."[3]

Contrary to plaintiffs' allegations, their traffic violation did not become "moot" just because they had completed their errand and were ready to leave the scene. *See* Sec. Am. Compl. ¶ 33. Mr. Fox had violated the District's regulation against parking in a commercial loading zone, Officer Squires had the authority to issue a notice of infraction for the violation pursuant to D.C. Code § 50-2303.03, and Officer Squires was legally permitted to detain Mr. Fox – and his passenger Mrs. Fox – while he addressed the situation. Had Mr. Fox moved his car when he was originally instructed to do so, there would have been no detention of Mrs. Fox at all. Sec. Am. Compl. ¶¶ 30–34.[4]

Since Mrs. Fox was lawfully detained, Sargent Boyd did not violate her Fourth Amendment rights when he ordered her to get out of the car and place her hands on the vehicle. Police officers who lawfully detain a vehicle for a traffic violation "may order passengers to get out of the car pending completion of the stop," even if they have no suspicion that the passenger has committed a crime. *United States v. Wilson*, 519 U.S. 408, 413–15 (1997). In reaching this

---

3   Plaintiffs argue that the holding in *Johnson* regarding the application of *Terry* to passengers "in a traffic-stop setting" does not apply here because this case involves a "parking" violation and not a "traffic" violation. Pls.' Opp. at 22. This argument fails on its face. First, Mr. Fox was involved in "traffic" because in the District the term "traffic" refers to "motor vehicles and all other vehicles, pedestrians, and animals." 18 D.C.M.R. § 9901. Second, his violation of 18 D.C.M.R. § 2402.6 constitutes a traffic violation because that regulation is part of Title 18 of the District's Municipal Regulations which governs "Vehicles and Traffic." Thus, the *Johnson* holding applies to this case.

4   Defendants also assert that when Mr. Fox "exited his vehicle to confront Officer Squires – *twice* – he left his running vehicle with the keys in the ignition in violation of 18 D.C.M.R. § 2418.1." Squires Mem. at 14; *see also* Boyd Mem. at 10. Since Mr. Fox disputes this allegation, Pls.' Opp. at 6, the Court will not rely on this alleged traffic violation to support its determination that the officers lawfully detained the occupants of the vehicle.

conclusion, the Court explained that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Id.* at 414. In this case, Mrs. Fox admits that she became progressively more upset as defendants arrested her husband. She attempted to get out of the car,[5] kept asking what was happening, and ultimately started crying. Sec. Am. Compl. ¶¶ 41–43. In response to her escalating emotional state, Sargent Boyd lawfully ordered her to get out of the car and place her hands on the vehicle in order to protect himself and the other officers on the scene and to prevent her from interfering with their arrest of Mr. Fox. *See Rogala v. District of Columbia*, 161 F.3d 44, 45 (D.C. Cir. 1998) (holding that police officers can take reasonable steps to control a traffic stop including requiring a passenger "to remain in the car, rather than in the street or on the sidewalk, in light of . . . concerns about [officer] safety, [the] creation of a traffic hazard, and . . . interference with" police activity).

The second amended complaint does not allege that Sargent Boyd took any other steps involving Mrs. Fox, *see* Boyd Mem. at 12 ("He took no other action against [Mrs. Fox], had no physical contact with her, did not pat her down, and did not ask for her identification."), and that fact supports the reasonableness of the officer's actions with respect to her. Moreover, after completing the arrest of Mr. Fox, Sargent Boyd did not continue to detain Mrs. Fox, and he left the scene. Sec. Am. Compl. ¶ 44.[6] Therefore, the Court will dismiss Count 1 because Sargent Boyd's brief detention of Mrs. Fox did not violate her Fourth Amendment rights.

---

5     Mrs. Fox asserts that she "was ordered back into the vehicle" but she does not allege that Sargent Boyd gave that order. Sec. Am. Compl. ¶ 41.

6     Any further detention of Mrs. Fox after Sargent Boyd left the scene cannot be imputed to him and is thus irrelevant to the Court's determination of whether Sargent Boyd violated Mrs. Fox's Fourth Amendment rights.

**B. Counts 2 and 3: Mr. Fox v. Sargent Boyd and Officer Squires (First and Fourth Amendment Claims)**

Count 2 asserts that defendants violated Mr. Fox's First Amendment rights by arresting him without probable cause in retaliation for his "objecting to Officer Squires' arbitrary order to move his car, and for disparaging Officer Squires' intelligence and criticizing his exercise of police power." Sec. Am. Compl. ¶ 51. Similarly, Count 4 contends that the officers violated Mr. Fox's Fourth Amendment rights by arresting him without probable cause. *Id.* ("Both Sgt. Boyd and Officer Squires knew that Mr. Fox had committed no crime, and the purpose of the stop, arrest, and detention was simply to bully Mr. Fox. . . ."). Defendants contend that these counts are also barred by the doctrine of qualified immunity.

In their pleadings, defendants argue that there was probable cause to arrest Mr. Fox for failure to obey the order that he move his vehicle from the no parking zone, and therefore, his First and Fourth Amendment rights were not violated. Defs.' Reply at 1; *see also* Squires Mem. at 13; Boyd Mem. at 16–17. With respect to the First Amendment claim, the officers also maintain that the allegations in the complaint are insufficient to show that they intended to retaliate against Mr. Fox based on his expression. Boyd Mem. at 13–14; Squires Mem. 9–11. Mr. Fox denies that he failed to obey a lawful police order. According to the plaintiff, he "did not refuse to move his vehicle. He merely questioned the basis for the request, as was his right to do so, and in response, Ofc. Squires, rather than ordering Mr. Fox to move his vehicle, withdrew his order by informing Mr. Fox that he could wait for a supervisor (and leave his vehicle in place while waiting)." Pls.' Opp. at 1.

In the Court's view, whether defendants are entitled to qualified immunity on these counts is a fact-based determination that is inappropriate for resolution at this stage. Defendants have moved for judgment on the pleadings but the pleadings in this case do not contain sufficient

facts to allow the Court to determine whether the officers crossed a clearly established constitutional line. Defendants may raise their qualified immunity argument again at the summary judgment stage after further factual development. But at this stage, the Court will deny their motions for judgment on Counts 2 and 3 because it does not have sufficient facts to determine whether defendants are entitled to qualified immunity. *See Bloem v. Unknown Dept. of Interior Employees*, -- F. Supp. 2d --, No. 11-2155 (JEB), 2013 WL 416312, at *10 (D.D.C. Feb. 4, 2013), citing *Ortiz v. Jordan*, 131 S.Ct. 884, 892 (2011) (denying the defendants' motion to dismiss because the court was unable to determine whether defendants were entitled to qualified immunity without further factual development).

## CONCLUSION

The Court will grant Sargent Boyd's motion for judgment on the pleadings on Count 1 because the factual allegations in the complaint do not plausibly suggest that he violated Mrs. Fox's Fourth Amendment rights. However, the Court will deny defendants' motions for judgment on Counts 2 and 3 because the pleadings do not provide sufficient facts to allow the Court to determine whether defendants are entitled to qualified immunity with respect to Mr. Fox's First and Fourth Amendment claims. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: February 20, 2013